CASE 52.—ACTION BY JOHN TROSPER AGAINST THE EAST JELLICO COAL COMPANY.—November 18, 1909.

## Trosper v. East Jellico Coal Co.

Appeal from Knox Circuit Court.

E. E. Hogg, Circuit Judge.

From a directed verdict for defendant, plaintiff appeals.—Affirmed.

1   Master and Servant—Safe Place to Work.—A servant cannot recover for injuries if he knows of a danger and does not exercise ordinary care for his own safety; and, where a servant engaged in hauling rails on a car in a mine knew that certain cross-beams were not high enough to permit him to pass without stooping while riding on the car, and neglected to do so when passing under one of them, which he could have seen if he had looked, he could not recover for injuries resulting from such negligence.

2.  Master and Servant—Permanent Structures Near Track—Application of Rule.—The rule applicable to permanent structures by the side of railroad tracks or overhead bridges does not apply to employes in a mine who either walked or rode slowly behind a mule.

EDWARD W. HINES, B. B. GOLDEN and McCHORD, HINES & NORMAN for appellant.

PITZER D. BLACK, JAS. D. BLACK and WM. R. BLACK for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Appellant, John Trosper, instituted this action against appellee, East Jellico Coal Company, to recover damages for personal injuries. Upon the conclusion of the evidence the court gave a peremptory instruction to find for appellee. To review the propriety of this ruling this appeal is prosecuted.

At the time appellant was injured he was employed in removing some steel rails and air pipe from ap-

pellee's mine and was struck by an overhead timber. He had been in appellee's employment for seven or eight years, but during the greater part of that time he worked outside of the mine. While so employed he ran the locomotive engine for a while, and also a small dinky engine. He also ran the drum which pulls the coal up and down the hill, and the compressor which forces the air into the mine. A few days prior to the accident Trosper and an employe by the name of Frank Burch exchanged jobs. Burch was employed on the inside of the mine in some capacity necessitating the use of a car and mule in hauling water, slate and other things. The exchange was made at the request of Trosper and Birch and was approved by the mine foreman. The accident occurred in what is known as the "7th left entry" of the mine. The coal had been practically exhausted when the work of "robbing the mine" (i. e., pulling the stumps, removing the rails, etc.) had commenced at the head of the entry. In order to save the piping and steel rails in said entry, it became the duty of appellant, his brother, Milton Trosper, and another employe of the name of James Curtis, to remove the piping and rails to the outside of the mine.

It was in the performance of this duty that appellant was injured. The place at which he was injured was about midway between the two ends of the entry, which was several hundred feet in length. There were arranged in the mine certain cross-beams which were located 1½ to 2 feet from the top of the mine. These cross-beams were set in hatches cut into the slate and supported the pipes which conveyed air from the compressor on the outside. At first appellant and his fellow workmen dragged the

rails out on the ground. He then claims he was in-structed by the mine foreman to use a car for that purpose. The steel rails were placed on the back of the car and fastened there with a chain; four rails being hauled at a time. It became necessary, accord-ing to the evidence for appellant, for him and his two fellow workmen to stand on the bumper in front of the car in order to hold it on the track. The bumper was about 10 inches above the rails of the track. While standing on the bumper, appellant claims that he turn-ed his head to see whether or not the rails were going to catch in the ties behind the curve, and, as he did so, Curtiss hallooed for him to look out. Appellant started to throw his head under the timber, but the timber struck his head and pressed him over the car, thus causing the injury complained of.

According to the evidence for appellant, the cross-beams were located about five feet and a half or a little over above the track. According to the testi-mony for appellee, the cross-beams were more than six feet distant from the track. Appellant is six feet three inches tall. While he had worked on the out-side of the mine his evidence shows that he has fre-quently been in the mine. The evidence shows that Curtis and appellant's brother always stooped when walking under the cross-beams. On the evening of the accident appellant and his companions had made at least two trips into the seventh left entry, and had passed the cross-beams not less than four times. The mine was sufficiently lighted to enable appellant to see a distance of from 30 to 35 feet. Appellant was en-gaged as driver, and it was his duty to look after the mule. He was in charge of the work that was then being done. In answer to the question, "You knew as

a matter of fact that there were cross-beams along different places in the seventh entry?" Appellant answered, "Yes." The further question was asked: "Then, if you had looked up there, you could have seen that cross-beam with which you came in contact? A. Yes." It is manifest from this evidence that appellant knew the cross-beams were there. They were right before his eyes and could be readily seen. All he had to do was to bend his head and avoid coming in contact with them.

While it is the duty of the master to furnish the servant a reasonably safe place in which to work, yet the servant cannot recover if he knows of a danger, and does not exercise ordinary care for his own safety. Knowing of the location of the cross-beams, appellant could have escaped injury by the exercise of the slightest degree of ordinary care.

Appellant insists, however, that the rule applicable to permanent structures by the side of railroad tracks or overhead bridges should be applied in this case. There is, however, a wide distinction between the two cases. A train moves along at a high rate of speed. A trainman while engaged in the performance of his duty on the top or side of a car may be caught unawares. While his attention is fixed upon the performance of his duties, he may be suddenly carried under a bridge and thrown from the train. Here the employes either walked or rode slowly behind a mule. The cross-beams were a part of the general plan of the mine.

Entries in mines are necessarily low, as there must be economy of space. This is not the case with reference to overhead or side structures along a railroad. There is plenty of room for them. There was no

danger of being caught unawares by being carried rapidly beneath one of the cross-beams. Being there as a permanent part of the mine, it was necessary for appellant in the exercise of ordinary care to recognize their presence and avoid coming in contact with them. If it was necessary to stoop while walking in order to avoid the timber, as appellant's companions testified, it was all the more necessary to stoop when standing on the bumper, which was 10 inches above the track. As the proof shows the mine was well lighted, the cross-beams were right before their eyes. He could not close his eyes to their presence, and then recover for an injury which was entirely due to his failure to observe them.

The fact that the pipe had been removed from the cross-beams at the time of the accident has no bearing upon the case. Appellant knew this fact, because he was engaged at that very time in taking the air pipes out of the mine; and he knew from whence the air pipes had come. Having stated that he knew the cross-beams were there, it is immaterial that the air pipes were not resting on the cross-beams. Even though the place where appellant was working may not have been reasonably safe for a person who did not know of the presence of the cross-beams, it cannot be said that the place was not reasonably safe for one who actually knew the cross-beams were there. We therefore conclude that the trial court properly instructed the jury to find for appellee.

Judgment affirmed.