## Louisa Coal Company v. Hammond's Administratrix.

(Decided October 14, 1914.)

### Appeal from Lawrence Circuit Court.

1. **Master and Servant—Action Against Master for Death of Servant—When Damages Not Recoverable.—**Where the foreman of a coal tipple, for whose death the master is attempted to be held liable, had exclusive control of the tipple and was charged with the duty of inspecting it and the appurtenant premises, to see that both were kept in a reasonably safe condition for the use of himself and other servants of the master in the performance of his and their duties, at and about the tipple, although it was made to appear from the evidence that his death was caused by a defect in the construction of the tipple, which made the place of his work one of danger to him, the master should not have been held liable therefor, as it further appears from the evidence that the defect and place of danger was known to the foreman, or by the exercise of ordinary care in the performance of his duties as inspector of the tipple and premises, could have been known to him.

2. **Master and Servant—Care to be Observed by Master—Care Ordinarily Required of Servant—The Greater Care Required of Servant Standing in Relation of Representative of the Master.—**

A servant, not charged with the duty of inspection, is not re-
quired to make a minute or detailed examination of the place
where the master puts him to work, nor to take notice of any
defect which would not be apparent to one who usually has
neither time nor opportunity for more than a casual, hurried
glance at the place of work or the instrumentalities, but is en-
titled to rely on the master's having adequately discharged his
primary duty of using ordinary care to make the place of work
and instrumentalities of work reasonably safe for his use; hence,
in such case, the master would be liable to the servant for an
injury sustained by the latter, caused by any defect in the place
of work or instrumentalities, that made them dangerous for the
servant's use, unless the defect or danger was so obvious that
one situated as was the servant ought, by the exercise of ordi-
nary care, to have discovered it. Where, however, the servant,
as was the decedent in this case, is the representative of the
master, and in control of the place of work and instrumentali-
ties for doing it, as well as the manner of its performance, if
he himself undertakes its performance, he assumes not only the
risks as to dangers that are obvious, but also such as ordinary
care on his part in inspecting the place or instrumentalities of
work before beginning it, could have enabled him to discover.

3.    Master and Servant—Peremptory Instruction—When the Trial
Court Should Give.—Where, as in this case, it was made to ap-
pear from the evidense, that the servant's presence at and con-
trol of the tipple for eighteen months prior to the accident re-
sulting in his death enabled him to know the defect in the tipple
and the consequent danger of his attempting to perform his
work in the manner adopted by him; and that if he did not
actually know of them it was because of his evident failure to
perform the duty of inspection required of him as foreman, the
trial court should have held as a matter of law that his death
was caused by his own negligence and by a peremptory instruc-
tion directed the jury to return a verdict for the defendant.

M. S. BURNS, PROCTER K. MALIN for appellant.

CAIN & THOMPSON, STEWART & VINSON and FOGG & KIRK
for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellee, Thursa Hammond, as administratrix of
the estate of Elijah Hammond, deceased, recovered in
the court below a verdict and judgment against the ap-
pellant, Louisa Coal Company, for $2,000.00 damages
for the death of her intestate, caused, as alleged, by the
negligence of the appellant in failing to provide him a
reasonably safe place to perform work required of him
as its employee. The appellant complains of the judg-
ment, hence this appeal.

The answer of the appellant denied the negligence attributed to it by the averments of the petition and pleaded contributory negligence on the part of the decedent. The latter plea was controverted by the appellee's reply.

The appellant is a corporation engaged in the business of mining and selling coal. Its mine is in Lawrence County, on the Big Sandy River, and its coal tipple is situated on the opposite side of the same stream. The coal is mined and carried in buckets upon a wire cable across the river to the tipple, where it is dumped and loaded into railroad cars. At the time of his death and for eighteen months prior thereto the decedent, Elijah Hammond, was in the employ of the appellant as foreman of the tipple and, as such, in charge of the tipple, the work thereat, and men there employed, with authority to employ, direct and discharge hands, control the tipple and all operations connected therewith, including the loading, unloading and moving of coal cars. Running under this tipple are railroad switch-tracks upon which cars for loading coal are placed and moved. A part of the work performed at the tipple is that of dropping railroad cars from the switch-tracks above the tipple down to and under the tipple and to places below, where they are taken out by the railroad trains. Ordinarily the cars so dropped are empties, which are set on the track above the tipple and then dropped when needed down under the tipple, where they are loaded with coal and thereafter moved down below the tipple, where they are left to be taken out by the engines. It frequently happens, however, that loaded cars are set on the tracks above the tipple from which they are moved down through the tipple onto the track below for the purpose of being hauled out. The tracks upon which the coal cars are thus operated are three in number and extend down under the tipple between bents on either side thereof, which consist of upright posts supporting the tipple house on either side of the track, connected by braces bolted through the posts; the braces being on the inside of the posts beginning at the bottom of the upper post and running diagonally across at the center of the second post and ending at the top of the third post. There being a slight downward grade in each of the railroad tracks, the cars to be loaded are moved under and through the tipple by the momentum given them by their own weight, be-

ing started by pushing them from the rear, and their movements controlled by one of appellant's servants, who stands at the end of the car containing the brake, which he releases or sets as may be found necessary to control its movements.

It appears from the evidence that the movement and placing of these cars was entirely under the control and direction of the decedent and that for two months prior to his death he himself had frequently moved these cars down, under and through the tipple. A day or two before the accident, by the decedent's direction and with his assistance, certain timbers had been thrown from the tipple house down between the railroad tracks under the tipple and there stacked. On the day he was killed a loaded coal car, known as a fifty-ton gondola, was standing upon the switch track about two hundred feet above the tipple. According to the evidence of both appellant and appellee many of the same kind of loaded cars had theretofore been dropped down under and through the tipple. Immediately before the death of the decedent he, with a helper, went to this car for the purpose of dropping it down through the tipple onto the switch-track below, from which it was to be taken out by the train. In proceeding to the car they passed under the tipple and by the timbers which were stacked between the tracks. When they arrived at the car the decedent took his position at the center of the front of the car at the brake and released the brake, while his helper with the aid of a pinch bar started the car from behind and put it in motion. When the car had proceeded on its way to within about thirty feet of the tipple deceased saw that one of the timbers stacked between the tracks was either upon or so close to the track that the car would strike it; whereupon, without stopping the car, he jumped off of it and running down in front of it threw the timber aside and then started back toward the car, and upon meeting it attempted to climb on the moving car, in doing which he placed one foot in the stirrup at the front and corner of the car and the other on the car beam, and while he was in this position the car in passing under the tipple caused his body to come in contact with a tipple post or brace and be caught between it and the car, which crushed and killed him. The post and brace were not so near the track as to be touched by the car as it passed them, but there was not room between the post or brace and car

for a man to ride upon the side of the car as the decedent was doing without being struck by and caught between them. The proximity to the railroad track of this post was closer than that of any other post supporting the tipple. None of the other posts of the tipple were close enough to any track running under the tipple to produce a like danger or cause a like accident. The nearness of this post to the track, however, was not because of its being out of line with the other posts supporting the tipple, but on account of a curve in the track rendered necessary in order to properly connect it below the tipple with the next adjacent track.

It is earnestly insisted for the appellant that the trial court erred in refusing the peremptory instruction asked by it after the introduction of appellee's evidence, and again at the conclusion of all the evidence. This contention will now be considered. The appellee's right of recovery was attempted to be rested upon the well-known doctrine that it was the duty of the appellant to furnish the appellee's decedent with a reasonably safe place for the performance of the work and duties required of him; that there was in this case an omission upon appellant's part of that duty, which constituted the negligence complained of as causing the decedent's death.

It is not claimed by appellee that the railroad tracks used in connection with appellant's tipple could have been located or arranged otherwise than as they are, but some of her evidence conduced to prove that the tipple and posts supporting it could have been constructed after a different plan than that employed and in such manner as to place the post by which the decedent was killed, as were the other posts used to support it, at such a distance from the tracks as would have prevented accidents like that resulting in his death. On the other hand evidence introduced in appellant's behalf as strongly conduced to prove that the plan by which the tipple was constructed was the best and safest that could have been adopted, and that, owing to the curve in the railroad track, the post at which the decedent met his death could not have been made to properly serve as a support to the frame of the tipple if it had been placed at any greater distance from the track than it is. But it will be unnecessary to consider the weight or effect of the evidence on this point, as it must be conceded that the position of the post in question, with respect to the

railroad track, caused the space between it and passing coal cars to be so narrow as to make it a place of danger to one attempting to climb on a moving car, as it was passing the post, in the manner attempted by the decedent. It is to be borne in mind, however, that the nearness of the post to the track was known to Hammond. He was the foreman or boss of the tipple and had continuously been in charge of it for a year and a half, during the whole of which time, according to the evidence, it was his duty to inspect its condition and upon discovering defects in any of its parts to report them to appellant that the latter might repair or remove them. According to the evidence he was also entrusted by appellant with the duty of supervising and directing the moving and loading of the coal cars at the tipple and of directing the other employees of appellant working at the tipple.

The rule invoked by the appellee for fixing liability upon appellant for the death of her decedent does not apply to the state of case here presented, but would apply to a servant who is not charged with the duty of inspecting the place or implements of his work, and may, for that reason, assume that the master has used ordinary care to provide him a reasonably safe place to work and reasonably safe instrumentalities for performing it. In such case, while the law imposes upon the servant the duty of exercising ordinary care to not knowingly expose himself to unnecessary and obvious risks or dangers in performing the service required of him by the master, he does not assume risks that are unknown to him, unless they are so obvious that one similarly situated, ought, by the exercise of ordinary care, to discover them. Pfisterer v. Peters & Co., 117 Ky., 501; L. & N. R. R. Co. v. Foley, 94 Ky., 224; Ashland Coal & Iron Co. v. Wallace, 101 Ky., 626; L. & N. R. Co. v. Vestal, 105 Ky., 461; Van Dyke v. Packet Co., 24 R., 1283; Covington Saw Mill & Mfg. Co. v. Clark, 25 R., 694; B. & O. R. Co. v. Baugh, 149 U. S., 386. In other words, a servant is not ordinarily required to make a minute or detailed examination of the place where the master puts him to work, nor to take notice of any defects which would not be apparent to one who usually has neither time nor opportunity for more than a casual, hurried glance at the place of work or the instrumentalities, but is entitled to rely on the master's having adequately discharged his primary duty of using

ordinary care to make the place of work and instrumentalities of work reasonably safe for his use. Where, however, the servant, as in the instant case, is the representative of the master, and in control of the place of work, or instrumentalities for doing it and the manner of its performance, if he himself undertakes its performance, he assumes, not only the risks or dangers that are obvious, but also such as ordinary care on his part in inspecting the place or instrumentalities of work before beginning it, could have enabled him to discover.

In the instant case it can not be doubted that the decedent's presence at and control of the appellant's tipple for eighteen months enabled him to know of the defect in the position of the post in question, and the danger, if any, arising from its nearness to the railroad track; and if he did not actually know of these things, it was because of his evident failure to inspect the premises or his closing his eyes to the opportunities daily afforded him of discovering them. In either event he was guilty of negligence.

In a number of cases we have held that trainmen injured by coming in collision with poles, overhead bridges or other obstructions negligently allowed or maintained by a railroad company in dangerous proximity to its tracks, were not ordinarily precluded from recovering damages because of their knowledge of the presence of the obstructions and the danger arising from their nearness to the tracks; for in the hazardous business of operating railroad trains the minds of the trainmen are, in the nature of things, so engrossed with their duties as to render it impossible for them to keep in mind the location of every dangerous obstruction along the railroad tracks. Forgetfulness as to such obstructions, in one engaged in the daily occupation of operating a railroad train or interurban electric car, does not of itself constitute negligence. The decedent, Hammond, was not a railroad operative, and the law as to the right of recovery by train operatives does not apply to such a state of facts as is presented in this case. Trosper v. East Jellico Coal Co., 135 Ky., 406.

The coal cars used at appellant's tipple were never rapidly moved by its employes, but slowly, a single car at a time, requiring only such control as would be maintained by a single man at the brake. It appears from the evidence that the decedent frequently moved the coal cars himself; and that on the occasion of receiving

the injuries that caused his death he knew of the presence of the pile of timbers between the railroad tracks near the tipple, for, as foreman of the tipple, he had caused them to be placed there. When he discovered the presence of one of the timbers on the track in front of the car upon which he was acting as brakeman the car was thirty feet from the tipple and even a greater distance from the obstruction on the track. The evidence is all one way as to the following facts: That when Hammond left the car to remove the obstruction from the track it was moving slowly and he had it under perfect control; that after he had removed the timber from the track he returned, meeting the car, which was still in motion, and while it was in motion attempted to get upon it without stopping it, having placed one of his feet in the iron stirrup at the side and front of the car and the other on the front beam, when his body was caught between the car and post and so badly crushed as to cause his death.

The situation as thus shown by the evidence manifests the decedent's negligence, and that, but for such negligence, he would not have been injured or killed. In front of the car he was controlling was a place of danger which was known to him as tipple foreman, or would have been known to him but for his negligence in failing to perform the duty of inspecting the tipple and its various parts. Yet with this knowledge, after removing the obstruction from the track in front of the car, he negligently attempted to get upon the car while it was still in motion, in doing which he voluntarily put himself in a place of known danger and thereby lost his life. There were two ways in which he could have removed the obstruction from the track without subjecting himself to danger. First, by stopping the car before leaving it to remove the obstruction, and again getting upon the car and to his place at the brake before putting it in motion; or, after leaving the car in motion he could, after removing the obstruction, have waited for it to pass the post and place of danger and again climbed upon it without stopping it. But instead of taking either of these safe methods of avoiding the danger ahead, he took the only course that could have resulted in his death. Even had the decedent not been charged with the duty of inspecting the tipple in its various parts to ascertain whether it was reasonably safe for the performance of the work required of appellant's

employes, it could not be said that his attempt to get upon the car while in motion, in the face of the obvious risk to be encountered in so doing, was excusable on the ground of his forgetfulness of the danger; for there is nothing in the evidence to justify such a conclusion. Nor can it be said that he was confronted by an emergency that compelled the action taken by him. If there was an emergency, it was caused by his negligence in failing to stop the car when he got from it to remove the obstruction that he saw upon the track, or in attempting to again get on it while in motion. One can not by his negligence create an emergency and at the same time avail himself of it to profit by the consequences of such negligence. As said in Wilson v. Chess & Wymond Co., 117 Ky., 567:

"The duty of the master to furnish a safe, or reasonably safe, place in which the laborer may do his work, is frequently either misunderstood or misapplied. In the first place, the master is not required to furnish an absolutely safe place. If the work is in and of itself dangerous, the master does not insure against such danger. On the contrary, there is nothing better settled than that the servant assumes the ordinary risks and hazards incident to the character of his work. Whatever may be the moral obligation resting upon those who employ people in hazardous work to furnish them the safest possible means to protect them from injury, the law does not forbid a laborer undertaking a hazardous employment with full knowledge of its dangers, if he wants to. If he does, the law leaves the risk upon him, for he has assumed it. There is no feature of the law of negligence better settled than this."

According to the view we are constrained, by the evidence, to take in this case, the contributory negligence of the decedent was clearly established. A servant is not entitled to recover for negligence of the master if himself also guilty of negligence without which the accident would not have occurred. The refusal of the circuit court to grant the peremptory instruction directing a verdict for the appellant was error. This conclusion makes the consideration of other questions, urged by the appellant, unnecessary.

Judgment reversed and cause remanded for a new trial consistent with the opinion. The whole court, except Judge Hannah, sitting.