# Bon Jellico Coal Company v. Walker's Administrator.

(Decided April 29, 1915.)

## Appeal from Whitley Circuit Court.

Master and Servant—Obvious Danger—Assumed Risk.—A miner was killed by being caught between the car he was taking out and props set near the track, while he was attempting to "sprag" the wheels. He knew there was not room between the props and the track to stand without being caught by a moving car, and also knew that there was another and safe way of holding the car back. With knowledge of the danger attending the method he adopted of holding the car back and of the fact that there was a safe way of doing it, he assumed the risk of the injury, notwithstanding the company may have been negligent in placing the props too close to the track.

TYE, SILER & GATLIFF for appellant.

R. S. ROSE and R. L. POPE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This action was brought by the administrator of Andy Walker, a coal digger, against the appellant coal company to recover damages for the death of his decedent, which he alleged was brought about by the negligence of the company. The negligence complained of consisted in placing timber, to prop the roof of the mine in the room in which Walker was working, too close to the track on which the coal cars ran in going to and from the room to the entry. On a trial of the case there was a verdict for the plaintiff and the coal company appeals.

The principal ground relied on for reversal is that the trial court should have instructed the jury to find a verdict for the defendant. This instruction was of course asked upon the ground that the evidence did not make out a case of negligence against the company.

The evidence shows that Walker had been working in this room more than four months, digging coal, and that it was his duty to bring empty cars out of the room to the entry; that in discharging this duty he passed over the track on which the cars ran a great number of times, making some days several trips; that over three months before the accident happened, props had been set up in this room for the purpose of supporting the roof, and that these props, which were probably four inches square, were set along the track about three feet apart

and probably ten or twelve inches from the rail; that the sides of the coal cars projected over the rails, and so there was a space of only about three or four inches between the sides of the cars and the props; that between this row of props and the rib or wall of coal back of the props, there was a space of probably four feet; that if cross timbers had been used on top of the props, they could have been set back from the track two or three feet, and if the props had been thus set back the cross timbers on top of them would have supported the roof, but that as there were no cross timbers, it was necessary to set the props close to the track for the protection of the roof.

Walker of course knew how close these props were to the track and how close they were to each other. He had passed them times without number and had helped to dig some of the holes in which they were placed. Beginning about the place where these props were located, the track ran on a down-grade to the entry, and so it was necessary, in taking out the cars, to control the speed, or else the loaded cars on this down grade being taken out of this room would run at a rate of speed that was unsafe. Two methods of controlling the speed of the cars were adopted by the miners: One was to walk behind the car and hold it back, and the other was to chock one of the wheels with what is called a "sprag;" that is, a short piece of wood which is put in the spokes of the wheel, thereby making it drag in place of roll.

On the morning Walker was killed he went in this room by himself with a car for the purpose of loading it, and after he had been there long enough to have brought the car out, one of the miners called him, and not receiving any answer, went to where he was and found him caught between the car and one of these props, either dead or in a dying condition. His breast was toward the car and his back against the prop. When this discovery was made, the men who had come to the place shoved the car back and took Walker out.

No person saw the accident, and there is no direct evidence as to how it happened. But the circumstances all clearly show that in attempting to "sprag" the wheel, he was caught between the post and the side of the car, which had then started down the grade. The mine foreman knew the location of these props and how close they were to the track, but it does not appear that he ever took any steps towards having them set back.

Several witnesses testified that these props were set dangerously close to the track; that they should have been several inches farther back so as to allow space for a person to pass, or at least so much space that a person could not be caught and hurt between a moving car and the props.

It was also shown as stated, that the roof could have been as well, if not better, supported than it was if the props had been set back from the track and cross timbers used to protect the roof. There was also evidence tending to show that it was less expensive to the company to prop the roof in the manner it was propped than to use cross timbers. This we believe to be a substantially fair statement of the evidence.

It shows, we think, three things: First. That these props were dangerously near the track and that this fact was known to the company; Second. That the location of the props, and the fact that there were only a few inches of space between them and a moving car was perfectly well known to Walker; and, Third. That there were two ways of holding the cars on this grade, one by "spragging" and the other by getting behind the car, one of these ways being dangerous—unless the person "spragging" stood behind the props as some did—the other safe.

Under the evidence Walker could not help knowing that he could not stand or go between these props and the track without being caught by a moving car. He of course knew that the car he was taking out was running down grade and therefore that it was not possible for him to get in front of it, between these props and the track, without being caught. But evidently this is what he did, with the result that he was caught and killed. It is also manifest that he knew the car could be held back by getting behind it, as other persons working with him in the room adopted this plan.

The danger of doing what Walker was doing when he was killed was perfectly plain, and although the company may have been guilty of negligence in setting these props so close to the track, we do not see, under the circumstances, how the conclusion can be avoided that Walker voluntarily took the risk of the danger attending what he was doing. It is seldom that a case has come under our notice presenting stronger facts for the application of the rule that the servant assumes the risk of obvious danger, than this one, and while we have

been sparing in the application of this principle, it must be applied in this case. Louisa Coal Co. v. Hammond's Admx., 160 Ky., 271; Burch v. Louisville Car Wheel & Railway Supply Co., 146 Ky., 272; Wilson v. Chess & Wymond Co., 117 Ky., 567; Trosper v. East Jellico Coal Co., 135 Ky., 406.

The judgment is reversed, with directions to grant a new trial, and if there is another trial and the evidence is substantially the same as in this record, the court will direct a verdict for the defendant.