# Cincinnati, New Orleans & Texas Pacific Railway Company v. York.

(Decided May 29, 1917.)

## Appeal from McCreary Circuit Court.

1. Master and Servant—Asumption of Risk—Employers' Liability Act.—The defense of assumed risk is available to the defendant in suits brought under the Employers' Liability Act, except where the injury is the result of the failure to observe some federal statute enacted for the safety of employees.

2. Master and Servant—Assumption of Risk.—Where an experienced person is placed in charge of a piece of machinery, he being an expert in that line of work, and over which he is given exclusive control, and whose duty it is to keep such machinery in repair, cannot complain of the master if the machinery gets out of repair and in that condition the servant continues to operate or try to operate it; and if while doing so he is injured, it is the result of a risk which he assumed.

3. Master and Servant—Unsafe Way to Do Work.—Where there is a safe way and an unsafe way to do the work, and the servant chooses the unsafe way, he assumes the risk of an injury which might happen to him.

4. Master and Servant—Assumption of Risk.—Where an experienced engineer had charge of a stationary gasoline engine which could be safely started by the use of the pump with which he was supplied, but could be more quickly started by rocking the wheel of the engine, a method which plaintiff had been adopting sufficiently long to become acquainted with it, and he chose that method of starting the engine which resulted in the injuries for which he sues, he must be charged with having assumed the risk, and for which the master is not liable.

JOHN GALVIN and TYE, SILER & GATLIFF for appellant.

J. W. RAWLINGS, J. W. SAMPSON and R. W. HARDING for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee (plaintiff) was an experienced engineer of stationary engines, being fifty years of age, and having worked at that business for over twenty years, about ten years of which he had worked and was familiar with gasoline engines.

On January 26, 1914, he was operating for appellant (defendant) a gasoline engine which was being used in connection with an air compressor to compress air for the purpose of being used in riveting some parts of a

bridge then being constructed by the defendant near Rathbon, Tennessee, to be used as a part of its track. The entire work had been completed with the exception of putting in some six or seven rivets, and in endeavoring to start the engine so as to work the air compressor for that finishing work the plaintiff got one of his hands shoved through the spokes of a large fly wheel constituting a part of the machinery, and when it started it caught his hand against a longitudinal rod running from near the hub of the wheel to a connection beyond its rim, resulting in breaking one of the bones of the forearm near the wrist and bruising and slightly injuring his elbow.

He brought this suit under the Federal Employers' Liability Act to recover damage for his injury, upon the ground that the machinery he was required to operate was unsafe, defective and dangerous, all of which was known to the defendant, or could have been known by the exercise of ordinary care, and was unknown to him, and that at the time of the injury he was obeying the orders of the foreman in charge of the work to start the engine for the purpose of working the air compressor.

The negligence charged in the petition is denied by the answer, and in addition a plea of assumed risk is interposed. A trial resulted in a verdict and judgment in favor of plaintiff for $1,500.00, to reverse which this appeal is prosecuted.

The testimony reveals substantially these facts: The plaintiff in 1906 began working for the defendant as an operator of a gasoline engine, and from time to time continued in that business until he sustained his injury. Some time about the 20th of December, 1913, the plaintiff was idle, and he inquired of the proper agent of the defendant if there was any work in his line in which he might be employed. He was informed of the contemplated construction of the bridge at Rathbon, Tennessee, and in a few days was ordered to report at Ferguson, Kentucky, where there was an engine and an air compressor expected to be used in the bridge work, and he was directed, in conjunction with a superior servant, to clean and oil the engine and machinery and get it ready for use in the construction of the bridge. He and the superior servant were also instructed to attach to the engine a coal oil carburetor, it already having attached to it a gasoline carburetor, and being what is ordinarily known as a gasoline engine. The purpose in doing this was to make a test to see whether the engine could be

operated with coal oil, which is a cheaper fuel than gasoline. The gasoline carburetor, however, was left attached so that if the coal oil failed the engine could be operated with gasoline. This work was done, and plaintiff himself acknowledges that the engine and machinery were in good working order, but that he had never operated one with coal oil. A test of some four or five days, or perhaps more, was made at Ferguson, and before the machinery was carried to Rathbon, to see whether it would operate with the use of coal oil, it was discovered that it would not. After this, plaintiff went to Rathbon to operate the engine which was shipped there, and did so for eight or ten days with gasoline exclusively before sustaining the accident, which, as we have seen, occurred just as the work was being completed.

According to all of the testimony, no one had anything to do with the operating of this engine or the air compressor except plaintiff. It was completely in his charge; it is shown that he was qualified and it was his duty to repair it if it became out of repair. The place where it was operated during the construction of the bridge was some 150 to 200 feet from where the riveting was being done, the compressed air being conducted through pipes to where it could be used by those putting in the rivets. There was some kind of apparatus provided, called a pump, by means of which the engine as a gasoline engine could be started within four or five minutes, but while plaintiff was cleaning up the machine and attaching to it the coal oil carburetor at Ferguson, Kentucky, he was there shown for the first time, as he claims, by a superior servant of the defendant, a new method of starting the engine, which was by "shaking or rocking the wheel." He claims that he never knew of this method of starting the machine until that time, but it appears that by it the machine could be started within about one minute, and that it was adopted by plaintiff after he learned of it and used by him throughout the time he was operating the engine at Rathbon, although when the engine was taken to that place it was so equipped that it could be started by the pumping process referred to.

It is intimated by plaintiff that the pump got out of repair, but it is not denied by him that it was his duty to repair it, and he at no time notified the defendant or any of its agents superior to him of any defect either in the pumping apparatus or other part of the machinery.

There is no claim made of any complaint made by plaintiff to any one of defective machinery, or a failure to comply with any promise to repair, or that any such promise was made. The case is simply one where the plaintiff, having full charge of the machine, operated it until the work was measurably complete and the last effort he made to start it resulted in his injury. It is true he says that there was some part of the engine or compressor removed in order to attach the coal oil carburetor, but it is not shown wherein this rendered the operating of the machine any more dangerous, especially when it was not only always started with gasoline, but continued to be operated with it. It is then quite difficult to see how the mere attachment of the coal oil carburetor in anywise contributed to the injury. It may be that starting it by the process of "rocking the wheel" was more dangerous than to start it by the use of the pump, but this was a matter with which the plaintiff became thoroughly familiar before the machine was carried to Rathbon, to say nothing about the number of days which he had been operating it at that place. If he chose this quicker method of starting the engine rather than to employ the slower one of using the pump, he assumed the increased risk, if any, and cannot lay the consequences of his choice at the door of his employer. Moreover, the rod with which the plaintiff's arm came in contact was some five or six inches beyond the nearest edge of the spokes of the wheel which he was shaking, and it is evident, even to the inexperienced mind, that there could not have been any possible necessity for projecting his arm so far through the spokes of the wheel as to cause it to come in contact with the rod when the machine started and the wheel commenced revolving; so that in this view the injury was in nowise attributable to any inherent danger in the machine, but to a matter over which the master had no control. In cases like this, where the machinery is in the entire charge of the servant, and under his exclusive management and superintendency, he stands in the relation of vice principal to his master, and under the facts of this case he assumes the risk growing out of his failure to properly repair or operate the machinery under his control. Even if there were negligence shown on behalf of the master, which cannot be found from the evidence, still if the servant knew of the defects and of the danger incident to his continuing in the work, and fully appreciated it, or if it

was in the line of his duty to examine, inspect and repair the machinery, but he failed to do so, in either event a continuation of the work is at his peril, and he assumes all risk incident thereto. Burch v. Louisville Car Wheel & Railway Supply Co., 146 Ky. 272; L. & N. Ry. Co. v. Adams, 148 Ky. 513; Concannon v. J. L. Strassel Paint & Roofing Co., 167 Ky. 141; Louisa Coal Co. v. Hammond's Admrx., 160 Ky. 271; Wiley v. C., N. O. & T. P. Ry. Co., 161 Ky. 305; Carey v. W. B. Samuels & Co., 139 Ky. 623; Davis v. C. & O. Ry. Co., 166 Ky. 490, and many other cases which might be cited

Illustrative of the rule as applicable to the facts of this case, this court in the Louisa Coal Company case, *supra*, said:

"Where, however, the servant, as in the instant case, is the representative of the master, and in control of the place of work, or instrumentalities for doing it and the manner of its performance, if he himself undertakes its performance, he assumes, not only the risks or dangers that are obvious, but also such as ordinary care on his part in inspecting the place or instrumentalities of work before beginning it, could have enabled him to discover."

Excerpts from other cases would serve no useful purpose, and would unnecessarily burden this opinion.

The many cases relied upon by counsel for appellee, among which are Stearns Coal & Lbr. Co. v. Calhoun, 166 Ky. 607; C. & O. Ry. Co. v. De Atley, 159 Ky. 687, and C., N. O. & T. P. Ry. Co. v. Guinn, 163 Ky. 157, do not apply here, as the facts are entirely dissimilar.

In the Calhoun case the injury was inflicted by an electrical machine furnished to a miner. The miner was not an experienced operator of such machines, but it was only a tool with which he did the work for which he was employed, viz., cutting coal. The electrical machine had been out of order, and the day before was placed in charge of the defendant's electrician that he might repair it. He did work on it, and then told the injured servant that he had fixed the machine and it was all right. About an hour after that time the injury was sustained. It requires no analytical mind to differentiate that case from the one we have here.

The De Atley case is one where an employe was injured in endeavoring to mount a fast running train, and it was determined that because of the peculiar facts and circumstances under which he undertook to do so that he

did not assume the risk. It will be equally apparent that there is no similarity between the facts of that case and those presented by this record.

In the Guinn case the injury complained of was produced by the flying of a piece of iron from a slivered hammer or anvil which itself was old and battered. The injured servant had no control whatever over either the hammer or the anvil. He was operating neither, but was only holding an iron rod that was being hammered with the worn-out hammer upon the worn-out anvil. The plaintiff had never used either, nor had he seen them used previous to the time he sustained his injuries. Clearly, this case does not come within the class to which the instant one belongs.

In suits brought under the Employers' Liability Act the defense of assumed risk is available to the defendant in all cases except where the injury grows out of a violation of some Federal statute enacted for the safety of employees. L. & N. Ry. Co. v. Patrick, 167 Ky. 118; Truesdell v. C. & O. Ry. Co., 159 Ky. 718; L. H. & St. L. Ry. Co. v. Wright, 170 Ky. 230; Jones v. Southern Ry. Co. in Ky., 175 Ky. 455; Seaboard Air Line v. Horton, 233 U. S. 442 and L. & N. R. R. Co. v. De Atley, 245 U. S. 310.

Neither does the record disclose any ground for recovery under the complaint that plaintiff at the time he sustained his injuries was obeying the orders of the foreman in charge of the work. As a matter of fact, no foreman was in charge of the machine which injured plaintiff unless he himself was acting in that capacity, because, as we have seen, he had full charge and control of it. As stated, it was located some 150 or 200 feet from the bridge work, and all the foreman in charge of that construction work did was to notify plaintiff that he was ready for the machine to start. As to how it should be started, and what appliances, methods or devices should be used for that purpose, the plaintiff himself was the sole judge. He received no directions from the foreman of the construction work as to how any of these details should be performed. Under such circumstances it cannot with any plausibility be claimed that plaintiff was operating the machine in any manner as directed by the foreman.

At the close of plaintiff's testimony, and again at the close of all the testimony, the defendant asked the

court to instruct the jury to find a verdict in its favor, which motion each time was overruled.

Clearly, under the authorities to which we have referred, that motion should have been sustained, and for the error in failing to do so the judgment is reversed, with directions that if the evidence should be substantially the same upon another trial, and similar motion should be made, that it be sustained, and for proceedings consistent with this opinion.