# Illinois Central Railroad Company v. Williams' Administrator.

(Decided December 15, 1916.)

TRABUE, DOOLAN & COX, BLEWETT LEE, R. V. FLETCHER, H. P. TAYLOR and J. BLAKEY HELM for appellant.

JOHN C. GRAHAM and O'DOHERTY & YONTS for appellee.

RESPONSE TO PETITION FOR REHEARING BY JUDGE CARROLL—Overruling.

In a petition for rehearing counsel for the appellant railroad company call attention to the fact that the court in the opinion that may be found in 171 Ky. 594, misstated the evidence when it said "Williams was not present when Holt gave the directions to these bridge carpenters to take down the bridge," and it is insisted that following the error contained in this misstatement of fact the court was persuaded to affirm the judgment when it should have been reversed if Williams was present when Holt gave the directions to take down the bridge.

Counsel are correct in saying that the statement in the opinion that Williams was not present when Holt gave the directions to these bridge carpenters to take down the bridge is inaccurate because there was evidence that Williams was present when Holt told some of the bridge carpenters that "the bridge had to come down;" but counsel are in error in assuming that belief in the truth of this inaccurate but immaterial statement led the court to the conclusion reached in the opinion. The vital point in the case was, did the bridge carpenters, under the direction of Holt, saw ,the stringer that fell with Williams, and did Williams know that the carpenters were going to or had sawed this stringer?

That this was the vital question in the case is made plain by instruction number one given to the jury, which instruction was not criticised by counsel on the appeal of the case. This instruction reads in part: "If the jury shall further believe from the evidence that the employes and servants of the defendant railroad company other than plaintiff's intestate, then and there engaged in said work, while acting under the control and supervision of the said supervisor, sawed the stringer mentioned in the

evidence; and if the jury shall further believe from the evidence that the sawing of the said stringer resulted in leaving the said stringer in a weakened and dangerous condition, and that said facts, if they were facts, were known, or by exercise of ordinary care could have been known, to the servants and employes of the defendant railroad company, as aforesaid, and were not known and could not by the exercise of ordinary care have been known to the plaintiff's intestate; and if the jury shall further believe from the evidence that the defendant railroad company, its agents and servants, as aforesaid, knew, or by the exercise of ordinary care could have known, that it was necessary for the plaintiff's intestate, in the performance of his duties as assistant bridge foreman, to step upon or walk upon the said stringer, then the law made it the duty of the defendant railroad company, its servants and employes, as aforesaid, to exercise ordinary care to advise and warn the plaintiff's intestate of the weakened and dangerous condition of the said stringer, if it was in such condition; and if the jury shall believe from the evidence that the defendant railroad company, its servants and employes, as aforesaid, failed to so advise and warn the plaintiff's intestate, and that by reason of such failure on their part, if any there was, the plaintiff's intestate, while in the performance of his duties in the capacity aforesaid, undertook to step or walk upon the said stringer, and that by reason of its weakened and dangerous condition, if it was in such condition, created as aforesaid, the said stringer fell with him to the ground, and that plaintiff's intestate was thereby caused to sustain the injuries which resulted in the loss of his life, then the law is for the plaintiff and the jury should so find. Unless the jury believe as above supposed, they will find for the defendant.''

It will be seen that in this instruction the case for the plaintiff in the lower court was put upon four propositions that the jury had to believe existed before they could find for the plaintiff: First, that the bridge carpenters under the supervision of Holt sawed the stringer; second, that Williams did not know the stringer was going to be or had been sawed; third, that it was the duty of the company to warn him of the condition of the stringer; and, fourth, that if he lost his life because of his ignorance of the fact that it had been sawed, the jury should find for his estate. Under this

instruction the jury found for the plaintiff, and there was sufficient evidence to justify them in so finding.

The evidence further shows that Holt did not direct these bridge carpenters to saw the stringer, nor did he know that it was going to be sawed. He was asked, "Did you direct the sawing of that stringer? A. No, sir. Q. Did you know it had been done? A. No, sir; I did not know it had been sawed. Q. You had an idea that that stringer ought to be sawed, A. I did not know how the stringer was in there at the time. Q. Didn't you tell Mr. Taylor a moment ago that you thought the stringer ought to be sawed? A. I said at the time the sawing was done. After that was done that was the only practical way that I saw without destroying another span of the bridge. Q. Didn't you entertain an idea all the time that the stringer ought to be sawed? A. After I saw it had been done. Q. Didn't you have that idea in your mind before it was sawed? A. I didn't know the span was bent, because I had not been up on the bridge, and I didn't know how the bridge was constructed. Q. Didn't you conceive the idea that that stringer ought to be sawed? A. I didn't know but what the stringer was good that was bent. All the rest were except this one. Q. Then did you indicate to anybody any idea that the stringer ought to be sawed? A. No, sir, I did not. Q. Your idea was it ought to be sawed? A. That was my idea, that the piece had to be sawed. Q. Didn't you entertain that idea before it was sawed? A. I didn't know the piece had to be sawed."

The evidence further shows that acting on the assumption that Holt's directions authorized the sawing of the stringer the carpenters proceeded to saw it. And the jury were told in the instruction that they could not find for the plaintiff if Williams knew, or by the exercise of ordinary care could have known, that this stringer had been sawed. The fact that Williams was present when Holt gave directions to the bridge carpenters to take down the bridge did not certainly or definitely carry with it to Williams, if he was present, the information that this stringer was going to be sawed. Holt himself did not know that the carpenters were going to saw the stringer and the jury found that Williams did not know they were going to saw it.

The petition for a rehearing is overruled.