## Louisville, Henderson & St. Louis Railway Company v. Wright.

(Decided May 16, 1916.)

### Appeal from Meade Circuit Court.

1. Master and Servant—Safe Place to Work—Assumption of Risk.— It is the duty of the master to furnish a reasonably safe place for his servant to perform his work; but this does not apply where it is the duty of the servant to make the place safe, nor where the master has provided a place, but the servant declines to use it and uses one of his own selection. If the servant is injured under the circumstances of either of the exceptions, the master is not liable. The servant assumes the usual and ordinary risks of the employment, and this applies to actions under the employers' liability act, unless the injury was produced by the failure of the master to observe some provision or some requirement of a Federal Statute.

2. Master and Servant—Assumption of Risk.—Where a locomotive fireman whose duty it was to see that the engine and tender were properly supplied with water and coal, and to make general inspection of them with the view of fitting them for the trip, and while so engaged, endeavors to walk over and upon the coal in

the tender from the cab of the engine to the rear of the tender, and in doing so stumbles over some object or article on top of the coal pile, the injury thus sustained is the result of an assumed risk for which the servant cannot recover; and especially so when in such case it was the duty of the servant to inspect the place upon which he was walking, and when he failed to use the means provided by the master to get to the rear of the tender, which were steps and handholds at the back of it whereby the servant might climb to the top of it for the purpose of discharging the duties which he was endeavoring to discharge when walking on the coal pile.

J. R. SKILLMAN and ERNEST WOODWARD for appellant.

J. D. HARDIN and L. FRANK WITHERS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On April 24, 1914, the appellee (whom we shall hereafter refer to as plaintiff), was working as a fireman on a locomotive engine for the appellant (whom we shall hereafter refer to as defendant), and had been working in that capacity for more than two years. A train upon which he was to make a trip as fireman was due to depart from the city of Louisville at 8:15 p. m. on that day for a trip terminating at Howell, Ind. At about 7 o'clock, he as it was his duty to do, went to the yards of the defendant, from whence the train was to depart, for the purpose of performing his duties relative to looking after the equipment of the engine for making the trip. His duties consisted in lighting, or seeing that others did it, the lamp in the head-light of the engine, and in putting at the rear of the tender other signal lights required by the defendant. They also consisted in seeing that the tender was properly supplied with coal and the tank with water. He states that the tools which are necessary for him, as fireman, to discharge his duties on the trip, were a shovel, pick, and a clinker hook. This last instrument is shown to be a rod of iron between two-thirds of, and an inch in diameter and between seven and ten feet long, with a forked hook on one end, and it is used for different purposes, principally that of assisting in the spreading of the fire in the engine, loosening cinders that may accumulate therein, and drawing down the coal from its depository in the tender so that it may be easily reached by the fireman when shoveling it into the engine. No one uses

any of these tools while on a trip except the fireman, or, perhaps, some one who may be temporarily performing his duties. At the end of the tender is a level surface forming a part of the covering of the tank, and near its outer and rear edge is an opening called a man-hole, and through which water is put into the tank.

When the plaintiff arrived on this occasion, he found the engine and tender at the usual place and the tender was well loaded with coal of different size lumps. He first lighted the lamp for the head-light, and adjusted it; he then prepared a red and a white light, one or both of which it was his duty to place upon the rear of the tender, and, with each of these in his hands, he attempted to go to the rear end of the tender over the pile of coal, from the cab of the engine. When he was near to the smooth surface where the manhole is, he claims to have hung his foot on a clinker-hook, which he says was lying directly across the top of the coal on the tender, and in some way he was caused to fall across what is known as a coal-board. This appears to be a construction running across the rear end of the tender separating the place for the coal from the man-hole. In the fall, in some way, his feet projected down into the man-hole, which he says was not closed, and he sustained by the fall, the injuries for which he sued. He does not claim that he sustained any injuries by reason of his feet going into the man-hole. But however, this may be, under the view which we take of this case, as we shall hereafter discuss, it makes no difference as to how he was injured, or as to the manner in which he fell, or what caused him to fall. Alleging that it was the duty of the defendant to furnish him a reasonably safe place in which to work and that it had failed to do this, he filed this suit, and upon a trial, recovered a judgment for $3,500.00. Complaining of this, the defendant prosecutes this appeal, relying upon many grounds, none of which according to our view, it is necessary to mention or discuss, except the one complaining of the action of the trial court in refusing to sustain the motion made by it for a directed verdict.

It is shown by the plaintiff himself that the coal in the tender at the time he attempted to walk over it, was not only well rounded up, but that it was also uneven and rough, as would necessarily be so from the various sizes of the lumps of coal. It is also shown by his testi-

mony, and a great number of other witnesses, that there is a step, or steps, together with some character of hand-holds at the rear end of the tender provided for the specific purpose of enabling persons to get to the top of the tender in order to perform a required or neces-sary duty, such as putting out signals, ascertaining the quantity of water in the tender, etc. He was asked and answered the following questions:

"Q. If you had used the steps in putting out the light (signal light) it would not have been necessary for you to pass over the place where you say the clinker-hook was, would it? A. No, if I had gone up the steps it wouldn't."

In regard to the lights which he had in his hands, he said:

"Q. Mr. Wright, as you passed over that coal pile with the red light and white light, were either of them burning? A. Yes, sir. Q. Making a reasonably good light? A. Yes, sir. Q. How far were your feet from the clinker-hook when you first saw it? A. Well, I sup-pose eight or ten inches, I don't know exactly. Q. It was lying on top of the coal pile? A. Yes, sir."

It is shown that this tender is supplied with coal by a servant of the defendant, known as the hostler, but it is plainly manifest that it was the duty of the plaintiff to see that the engine and tender were properly equip-ped, not only with coal and water, but also with neces-sary tools. In other words, there can be no doubt after reading his testimony, although reluctantly given on some points, that it was his duty to inspect the engine and tender to see whether or not it was properly equip-ped for making the trip, and this is the reason why it was his duty to report between one-half or an hour pre-ceding the time of departure. He admits that he should have examined the coal, and to have seen whether there was sufficient water in the tank, and to see about the shovel and pick, but he hesitates about the clinker-hook. He states, however, that there was another clinker-hook about the cab on this occasion, and further, that on top of the coal was not the proper place for the clinker-hook to be. However this is, we are convinced from the testi-mony that if there was an unnecessary and surplus clinker-hook upon any part of the tender, it was his duty to discover and remove it, for, it is through just such employes as he, that the master performs the duty of

making the train reasonably safe for the purpose of. making the trip. We are not only convinced of this by plaintiff's testimony, but a great number of witnesses testified positively to the same fact. In the very nature of things, and from the generally known method of conducting such business, it is difficult to see why it was not as much a part of his duty to see and observe this clinker-hook on the coal pile, as it would have been to have seen that the coal was properly put into the bin, a thing which he admits was his duty.

A great number of authorities are cited to substantiate the rule that it is the duty of the master to furnish the servant a reasonably safe place in which to work. There is absolutely no dispute as to this being the law. It is one of universal recognition, and of long and continuous application by this court. But the rule does not apply in all instances, for, as said by this court in Ballard & Ballard v. Lee's Admr., 131 Ky. 412:

"It is not possible to lay down any general principle that may be strictly applied in defining the duty of the master to his servant in the performance of the duties for which he has been employed. Nor is it possible to define with precision the line that separates the obligation to furnish reasonably safe places and instrumentalities from conditions that absolve the master from the full performance of this duty. Nearly every case presents different facts, and to these ever varying facts must be applied the law as the court understands it. This court has taken a strong and well-defined position upon the subject of holding the master to a strict accountability in furnishing safe places, as well as appliances, and we do not intend or desire to get away from the long line of decisions declaring and enforcing this rule. But manifestly there are some cases in which it should not be applied, and we think this is one of them." Labatt on Master and Servant, section 29.

One of the exceptions to the rule is, that if it is the duty of the servant to make the place safe, he cannot complain of the master for its being unsafe. (Williams Coal Co. v. Cooper, 138 Ky. 287). Nor does it apply to a servant whose duties require him to inspect the place. Straight Creek Coal Co. v. Huddleston's Admr., 147 Ky. 94; Williams Coal Co. v. Cooper, *supra;* Eagle Coal Co. v. Patrick's Admr., 161 Ky. 333.

It is thus stated in the Cooper case: "The master should not in reason be required to make the places safe for those he has employed to put them in a safe condition."

Under the doctrine of these cases and many others from this court, which we could cite, we do not think the defendant was liable in this case under the rule sought to be applied.

It is also well settled that the rule has no application in cases where the master has provided a safe place for the servant to work or the means by which it may be done, and he voluntarily declines to use the place or the means which the master has provided, or furnished, but selects another place, or adopts another method, in doing his work, of his own choosing. If he pursues the latter course without the direction of the master, he does so at his own peril and may not hold the master liable for his injuries, if any should occur. This exception is both reasonable and just and to hold otherwise would make the master an insurer against accidents to his servants. It would also destroy the mutual obligations existing between master and servant in such cases, for, if the master is obligated to furnish a reasonably safe place for the servant to work, a corresponding obligation should rest upon the servant that he will do his work in or at that place. Or if the master is obligated to furnish reasonably safe means or methods of doing the work, the servant is likewise obligated to use those means or follow that method. A different rule would manifest a partiality by the law towards litigants which does not exist. And so, in the case of Broadway Coal Mining Co. v. Render, 119 S. W. 198 (Ky.), it is said:

"The duty of the master to furnish a reasonably safe place applies only to the place where the employe is required to use for the purpose of performing his duty." (See also 26 Cyc., page 1101.)

The defendant in the case now being considered, had prepared a safe way and method for plaintiff to have performed the duties in which he was engaged at the time of the accident. The step and hand hold to the rear of the tender were furnished for the very purpose of enabling servants to perform such duties as plaintiff was performing at the time, and it requires no argument to show that to have used these appliances would, in all probability, have enabled him to have performed

his duties with perfect safety. The effort to contend otherwise in this case is wholly unjustified from anything in the record, or any reason, as to that matter. But we are not allowed to speculate in this regard. It is sufficient for the purpose of this case to say, that plaintiff did not appropriate the furnished appliances to perform his duties, but chose his own method by which to perform them. When he does this, he must do so at his peril. The fact, if it be a fact, that firemen would frequently perform the duties in which plaintiff was engaged in performing, in the same manner which he adopted, by walking over the top of the tender, can not alter the case. The testimony found in the case looking to the establishment of this fact, did not apply to an engine about to depart on a trip and which was stationary in the yard. It sought only to show that this method was frequently employed by firemen in going to the rear of the tender when the train was in motion, which in all probability is, at least to some extent, correct, for when the train is in motion there is no opportunity afforded to get to the rear of the tender by walking on the ground. In short, to apply the ''safe place doctrine,'' as insisted upon here, would require the master to see to it that all tenders upon trains, when loaded to their capacity with coal, as is always the case when commencing a trip, shall be a reasonably safe place for his servant to walk upon and be free from any obstructions against which the servant might stumble and fall. Such a rule would require the master to free such places, not only of clinker-hooks, but likewise lumps of coal, which might be reasonably calculated to produce the same results to one walking over the coal. A mere statement of the proposition indicates its unreasonableness. The defendant not being required, as we have seen, to make it safe for plaintiff to walk over and across the coal placed in the tender, the fact that there was a clinker-hook on top of it can neither add to, nor detract from, the defendant's liability. There being no violated duty which the defendant owed to the plaintiff shown in this case, it was incumbent on the trial court to have sustained the motion for a peremptory instruction.

There is still another reason why the motion made by defendant for a peremptory instruction should have

been sustained, it being: 'that under the facts disclosed by this record, the risk was assumed by the plaintiff. The doctrine of assumed risk is, that the servant assumes the ordinary risks and dangers growing out of, and which are usually incident to, the work for which he is employed. Burton Construction Co. v. Metcalf, 162 Ky. 366. Such assumed risks are those which are incident to the character of work, or which may be created by the servant because of the methods which he employs in performing the work. Davis v. C. & O. Ry. Co., 166 Ky. 490; and authorities cited therein. The defense of assumed risk is not withheld from the master by the employers' liability act unless the injury complained of was the result of a failure of the master to comply with some requirement of a Federal Statute. L. & N. R. R. Co. v. Patrick, 167 Ky. 118; Davis v. C. & O. Ry. Co., *supra*. There is no such failure on his part relied on in this case. It would serve no useful purpose and would render this opinion unnecessarily long to further discuss this principle, or to show the application of the rule to the facts of this case. The reason why the application of the doctrine is denied by counsel for appellee, is because he contends that it does not apply where the master is required to furnish a safe place for his servant to perform the work; in which contention he is correct. We have seen, however, that the place where the injury occurred in this case is not one which the master, under the facts disclosed, was required to maintain in a safe condition for the use of the servant while performing his work. It therefore results that the exception to the application of the doctrine of assumed risk, contended for by counsel, has no application here.

It would require a too lengthy opinion to notice the authorities cited by counsel for appellee in their brief, and to point out the difference between the facts in them and those in the case under consideration. It is sufficient to say that we have examined them, and others of like tenor, and find none of them applicable here. In all of them where the facts justified it, the principles which we have discussed are fully recognized. These conclusions render it unnecessary for us to consider other questions raised and discussed in the briefs.

Wherefore, the judgment is reversed, with directions for proceedings in accordance with this opinion.