## Illinois Central Railroad Company v. Williams' Administrator.

(Decided October 19, 1916.)

### Appeal from Ohio Circuit Court.

1.  Master and Servant—Risks Servant Assumes.—A foreman assumes the risk of conditions that he directs to be brought about, or that he knows, or in view of surrounding circumstances may be presumed to know, will be brought about, as well as risks

arising from conditions that come up from time to time, when he is in charge of the work and directing what shall be done. He also assumes the risk of natural or inherent defects or dangers in the work that are produced by its present or changing condition.

2.  Master and Servant—Risks Servant Does Not Assume.—When the master, in any kind of work, whether it be tearing down or building up, creates by his orders a new and unexpected danger, the existence of which is unknown to some of the servants engaged in the work, he is under a duty to give warning to such servants who are likely to be exposed to the danger and who are not apprised of it.

3.  Master and Servant—Facts Stated.—The foreman of a bridge crew directed his men to take the plank off of an overhead wagon bridge that had been partially knocked down by a derailed train beneath it. While his men were engaged in this work a superior officer directed the men to saw one of the stringers in the bridge, and the men partially sawed this stringer and left it in that condition. When the foreman, who did not know of the orders given to saw this stringer or that it had been sawed, stepped on the stringer for the purpose of walking on it, it broke and fell, killing him. Held, that the master was liable.

H. P. TAYLOR, BLEWETT LEE, R. V. FLETCHER and TRABUE, DOOLAN & COX for appellant.

JOHN C. GRAHAM and O'DOHERTY & YONTS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Briefly, the case is this: J. V. Williams was an assistant bridge foreman in the employment of the Illinois Central Railroad Co. The tracks of the railroad company at Rockport, Ky., were crossed by an overhead wooden bridge used for vehicle and foot passage. This bridge was partly supported by upright posts put in the ground near the railroad tracks. One night in May, 1913, when a freight train was derailed under this bridge, one of the freight cars turned over against one of the posts supporting the bridge, causing the bridge to partially fall down and rest on the car. The planks on this bridge were laid on sound pine stringers about twenty feet long, seven inches wide and sixteen inches deep, and in clearing the tracks of the wreck it was found to be necessary to take down the bridge. Engaged in the work of removing the wreck and clearing the track was a crew of section hands and also a bridge crew, Williams being the foreman in charge of the bridge crew.

After the section crew and the bridge crew had been engaged in the work of removing the wreck for a few hours, Sam Holt, track supervisor for the railroad company, appeared on the scene, and as he was the superior officer of Williams as well as the foreman of the section crew, he took charge of the work then in progress. Before Holt arrived some of the bridge crew, by direction of Williams, had been engaged in tearing up the planks in the bridge so that the overturned freight car under it, and on which it fell, might be removed or placed on the track, and these men had taken up a good many of the planks in the floor which were nailed to the stringers. When Holt took charge of the work after his arrival, he ordered two of the crew of bridge carpenters to take down the bridge. In obedience to this order two of the men got a cross-cut saw and sawed one of the stringers nearly through, when, for some unexplained reason, they quit. A few minutes after this, Williams, in the course of his duty, had occasion to walk across the bridge, and when he stepped on this stringer which had been partially sawed, his weight caused it to break in two, and when it broke Williams fell with it to the track, thereby sustaining injuries from which he died. To recover damages for his death, this suit was brought.

After the pleadings had been made up, there was a trial before a jury and a verdict and judgment against the railroad company for seven thousand dollars.

On this appeal no complaint is made of the instructions or that the trial court committed error in the admission or rejection of evidence. A reversal is sought upon two other grounds thus stated by counsel for the railroad company:

"First, upon the ground that in doing the work of tearing down the bridge, Williams assumed the risk of his employment, and that this case does not come within the exception to the rule arising where the master is present and directs and controls the method of doing the work.

"Second, there was no negligence either in sawing the stringer or in not warning Williams of the fact that it had been sawed."

The negligence charged, and on which a recovery was had, was that the railroad company, through its officer superior to Williams, caused the stringer to be partly sawed through, thereby leaving it in a weakened and

dangerous condition, without giving any warning or notice to Williams that it had been or would be sawed, or that it would not be safe to go upon it, and that Williams, in the course of his duties, undertook to walk across this stringer, without any notice that it had been made unsafe by the sawing.

There is really no substantial dispute as to the facts. There was no material conflict in the evidence in behalf of the administrator of Williams and the evidence in behalf of the railroad company. The evidence as a whole conduced to show that Williams, before the arrival of Holt, had charge of what work was being done on the bridge, and that under his direction the men in his crew had been taking up the planks in the floor of the bridge. That when Holt came he took charge of the work and directed the bridge crew to take down the bridge, and although he did not tell them in express terms to saw the stringer, they understood his direction to take down the bridge to mean that they should saw the stringer, and there is no claim on the part of the railroad company that the bridge men did not have the right to saw the stringer under the general direction of Holt to take the bridge down. Williams was not present when Holt gave the directions to these bridge carpenters to take down the bridge, nor did he know that the men were going to saw the stringer or that it had been sawed, and he did not give directions of any kind to the men looking towards sawing the stringer or have any reason to anticipate that it would be sawed, nor was he warned or notified by any person that it was going to be or had been sawed; neither was the cut made by the saw so obvious that in the exercise of ordinary care it could have been discovered. It was also customary for employes to walk on stringers like this, and before it was sawed it could have been walked on with safety.

Under these facts we think that the railroad company was under a duty to give Williams some warning or notice that the stringer was going to be or had been sawed, and that Williams did not assume the risk of being thrown to the ground and killed when he stepped on this stringer.

It is true that a person occupying the position of Williams assumes the risk of conditions that he directs to be brought about, or that he knows, or in view of surrounding circumstances may be presumed to know, will

be brought about, as well as risks arising from conditions that come up from time to time, when he is in charge of the work and directing what shall be done. He also assumes the risk of natural or inherent defects or dangers in the work that are produced by its present or changing condition, as he will be expected to take notice of these present and changing conditions and will be charged with notice of the existence of dangers that may come up.

But in the case we have the dangerous condition that caused the death of Williams was not created under his orders or by his directions, nor did it naturally inhere in the work. It was a new, unexpected, and dangerous condition, created by the direction of a superior officer, that Williams had no reason to anticipate would arise and of which he had no notice or warning.

We, therefore, think that it may be laid down that when the master in any kind of work, whether it be tearing down or building up, creates by his orders a new and unexpected danger, the existence of which is unknown to some of the servants engaged in the work, he is under a duty to give warning to such servants as are likely to be exposed to the danger and are not apprised of it. It is on this principle that the liability of the company in this case rests.

This court from time to time has had before it a great many cases in which it has been held that where a servant is engaged in tearing down bridges or buildings or making repairs in which conditions change as the work progresses and new dangers arise from time to time, he assumes the risk incident to the perils created by the nature of the work. But in all this class of cases the hazards that arose in the progress of the work were caused by the inherent danger of the work itself and not by some new and unexpected danger created by the direction of the master. An illustrative case on this subject is Davis v. C. & O. Ry. Co., 166 Ky. 490, where it appears that Davis, while repairing a water column at a depot, sustained injuries by falling to the ground on account of the slippery condition of the column. In holding that he could not recover damages from the railroad company, the court put its decision upon the ground that Davis knew the character of work he was to do and the dangers attending its execution and assumed the risk.

In Daisy v. Wagner, 162 Ky. 554, under a somewhat similar state of facts to those appearing in the Davis case a recovery was denied. Other like cases are: Russell v. W. E. Caldwell Co., 158 Ky. 229; Ballard & Ballard Co. v. Lee's Admr., 131 Ky. 412; Standard Oil Co. v. Watson, 154 Ky. 550; Dyer v. Pauley Jail Building Co., 144 Ky. 592. But this line of cases is not authority for the position of counsel for the railroad company because the facts of this case take it out of the rule laid down in these cases.

The judgment is affirmed.