# Louisville & Nashville Railroad Company v. Reverman's Administratrix.

(Decided March 1, 1929.)

GALVIN & TRACY and ROUSE & PRICE for appellant.

ROBERT C. SIMMONS and RICHARD T. VON HOENE for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Appellee, Eleanor Reverman, administratrix of William H. Reverman, brought this action under the Federal

Employers' Liability Act (45 USCA secs. 51-59) in the Kenton circuit court against the Louisville & Nashville Railroad Company for the death of her intestate and recovered judgment for $12,000. The railroad company has appealed.

Reverman, who was employed by appellant as yard conductor, was killed on February 2, 1926, while at work with his crew in the railroad yards in Cincinnati, Ohio, in territory and on trackage under the control of the Chesapeake & Ohio Railway Company. It is conceded in appellee's brief that the facts are fairly and fully stated in appellant's brief, and we shall adopt in substance the statement of facts as it there appears.

Louisville & Nashville train No. 4 arrives daily at the Central Union Station in Cincinnati at 7:30 o'clock a. m. In its makeup are two express cars. These are left in the station for partial unloading until about 10 o'clock in the morning, at which time they are removed to a track known as No. 4 in the adjoining yards, where the unloading is finished, and the cars are then reloaded for the outgoing trip on a train which is scheduled to leave the Cincinnati station at 8 o'clock in the evening. The Louisville & Nashville Railroad Company operates in the Cincinnati station under an arrangement with the Chesapeake & Ohio Railway Company, and the movement of all trains is under the control of the last-mentioned company. The accident in which Reverman lost his life happened on track No. 4 to which the express cars had been removed. There is a freight depot fronting on Third street in Cincinnati known as the Park Street Station. Track No. 4 terminates in a bumping post immediately in the rear of this station. From the bumping post the track extends in a generally westward direction for a distance of 171 feet, at which point it is intersected diagonally by a cut-off switch track leading to what is described in the proof as the Mill Street Freight Station. Track No. 4 is just long enough to accommodate two express cars which are each about 70 feet in length and the track is used exclusively for this purpose; that is, the two cars are put in on this portion of track No. 4 each morning and remain there until the outgoing train is made up in the evening. The contour of this stretch of track is, as the witnesses say, saucer shaped. There is a descending grade from the bumping post for a distance of about 75 feet and then an ascending grade to the cut-off switch a distance of about 96 feet. At the lowest point

there is an overhead structure, and the deflection in the grade was made to more safely clear this structure. The level of the track at the bumping post is six inches above the lowest point and at the cut-off switch its level is one foot above the low point. When the two cars are on the track they naturally hold firmly in position by gravity.

It was the practice in making up the out-going train in the evening of each day not to take the two express cars out of track No. 4 at the same time. The Central Union Station accommodations were not adequate for the completed train, and only one of the cars was taken into the station and made up into the train. The other car was taken out by another engine and hauled to Covington, Ky., where it was coupled into the train when the latter arrived at that point. Reverman and his crew were engaged in taking off of track No. 4 the head or first car for the purpose of moving it to the station to be made up into the out-going train. The ordinary procedure was to head the engine in on track No. 4, couple up the first express car to the engine, then uncouple the two cars, have the engine pull the head car away from the car to be left, then couple the backup hose on the rear of the car to be taken out, and then proceed to the station. The backup hose was a stretch of tubing about 6 or 7 feet in length with a coupling on one end and a signal whistle on the other. When attached to the air at the rear of the car it could be used to give a warning whistle as the car was pushed along in front of the engine. On the evening of Reverman's accident, the above procedure was followed. The engine headed in on track No. 4, and coupled up with the first car. Reverman got the backup hose from the engine and proceeded to a point where the two cars were coupled together. He uncoupled the cars and gave the engineer a signal to back up. The engine moved back about 7 or 8 feet when Reverman signaled the engineer to stop, which he did. Reverman then went in between the two cars and attached the backup hose, and, while there, the other car, being on the descending grade when the support of the first car was removed, rolled forward, and Reverman was caught between the two cars and killed.

The plaintiff alleged that the railroad company was guilty of negligence in failing to brake or chock the eastern car when it was placed on the track in the morning so as to prevent its movement when the western car was moved. The railroad company contends that the court

erred (1) in overruling its motion for a directed verdict; (2) in giving and refusing to give instructions to the jury; and (3) in admitting incompetent testimony prejudicial to the defendant.

It is contended that there is not sufficient evidence to establish negligence on the part of the defendant under the rule of the federal courts, which governs in cases brought under the Federal Employers' Liability Act, and not the scintilla rule adhered to by this court.

The kind and amount of evidence required to establish the negligence specified in the act is not subject to the control of the several states, but must be determined under the applicable principles of law as interpreted by the federal courts. L. & N. R. R. Co. v. Grant, 223 Ky. 39, 2 S. W. (2d) 1063; Gulf, Mobile & N. R. Co. v. Wells, 275 U. S. 455, 48 S. Ct. 151, 72 L. Ed. 370; Chicago, M. & St. P. R. Co. v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 70 L. Ed. 1041; New Orleans & N. E. R. Co. v. Harris, 247 U. S. 367, 38 S. Ct. 535, 62 L. Ed. 1167; Central Vermont Ry. v. White, 238 U. S. 507, 35 S. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1915B, 252.

It is apparent from the record that the conditions prevailing on track No. 4—that is, that the level of the track was lower near its middle point than at either end —was not only obvious but known to Reverman. The act of negligence relied on was the failure of the crew that placed the two cars on the track in the morning to observe the alleged usual practice of securing the easternmost car by brakes or blocks so that it would not move when the other car was uncoupled from it. If such a practice or custom prevailed, then decedent had a right to rely upon it and to assume that the easternmost car was braked or blocked so as to prevent it from rolling down the grade when the other car was uncoupled and moved. Under such circumstances the risk was not an ordinary risk of the business which Reverman assumed, but was a risk brought about by appellant's negligence, for which it would be liable unless Reverman knew that the car was not held by a block or brake.

An employee does not assume a risk growing out of an employer's negligence unless he knows that it exists or the danger is so open and obvious that he must have appreciated it. L. & N. R. R. Co. v. Stewart's Adm'r, 207 Ky. 516, 269 S. W. 555. The Federal Employers' Liability Act does not change the rule as to assumption of risk except where the master's violation of a federal

statute enacted for the safety of employees contributes to the injury. Delaware, L. & W. R. Co. v. Tomasco, 256 F. 14, 167 C. C. A. 286, certiorari denied; Tomasco v. Delaware; L. & W. R. Co., 251 U. S. 551, 40 S. Ct. 56, 64 L. Ed. 410; Baughan v. N. Y., P. & N. R. Co., 241 U. S. 237, 36 S. Ct. 592, 60 L. Ed. 977; Jacobs v. Southern Railway Co., 241 U. S. 229, 36 S. Ct. 588, 60 L. Ed. 970; Seaboard Airline Railway v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1. Here the danger was not open and obvious, but could only be ascertained by an inspection of the car, which decedent was not required to make if it was the customary practice to secure the easternmost car by brakes or blocks when it was placed on the siding by the morning crew.

The accident occurred in territory under the control of the Chesapeake & Ohio Railway Company, and all employees by whomsoever employed were governed by the rules and regulations of that company. The plaintiff offered, and the court admitted in evidence, a rule published in the Chesapeake & Ohio book of rules under the caption of "Freight Conductors," The rule is as follows: "They must see that brakes are set on cars left on side tracks, and where on grades or during high winds that the wheels are blocked. So far as possible all cars on side tracks must be left coupled."

It was plaintiff's theory that this rule applied to the placing of cars on the side track in question, and that it was the duty of the crew that placed the two cars on the side track to block the wheels and set the brakes on both cars. We are of opinion that it was error to admit this rule in evidence, since it clearly had no application to the situation where Reverman was killed. The purpose of the rule was to require that freight cars placed on a siding should be securely braked or blocked so as to prevent them from rolling into the main track or other side tracks and thus creating a dangerous situation. Here there was no necessity for the application of such a rule, since it was physically impossible on account of the grade for the two cars to roll off of the side track into a place of danger. The introduction in evidence of this rule only tended to confuse the issues. No rule having been promulgated to cover the situation in question, the only issue was whether or not it was the customary practice for the morning crew to brake or chock the easternmost car. The evidence on this point is not entirely satisfactory, as it appears that numerous crews are employed in the yard

where the accident occurred and only four witnesses were introduced who had on rare occasions been members of crews that had placed the two cars on track No. 4. All of these witnesses testified that the cars were braked, or chocked, or both, when placed on the track in the morning, but they were not clear as to the purpose for which this was done, and only one of them testified positively that the easternmost car was always secured. However, the judgment must be reversed for other reasons, and, since the evidence may be substantially different on another trial, we will not determine whether or not the evidence on this point was sufficient to take the case to the jury.

The instruction given by the court and complained of by appellant is as follows: "The court instructs the jury that it was the duty of the defendant, the Louisville and Nashville Railroad Company, its agents, servants, and employees in charge of the work of placing upon Track Number Four the express cars, mentioned in the pleadings and proof, to use ordinary care to so place said express cars and put them in a condition that it would be reasonably safe for the decedent in this case, as an employee of said defendant, while exercising ordinary care for his own safety to disconnect said cars for the purpose of removing either of said cars from said track at the time and place mentioned in the proof; and if the jury believe from the evidence that the defendant, its employees, agents, or servants, who placed said express cars upon said Track Number Four failed to use ordinary care in placing said cars and putting them in a reasonably safe condition as named in this instruction, and you further believe from the evidence in this case, by reason of said failure of defendant, its employees, servants and agents to so place said cars, if such there was, the decedent William Reverman was struck while engaged in disconnecting said cars for the purpose of removing either of same from said track, by the rear car rolling against him, and thereby injuring him, from which injuries he died, then the jury should find for the plaintiff. Unless you so believe you should find for the defendant."

The instruction was prejudicially erroneous, in that it assumed that it was the duty of appellant's employees in charge of the work of placing the cars upon track No. 4 to secure the easternmost car so that it would not move when the other car was disconnected. The instruction

506

should first have submitted to the jury the question as to whether or not it was the custom to so secure the car, and, if it was, then it was the duty of the crew that placed the cars on the track on the day that Reverman was killed to so secure the easternmost car.

The appellant complains that the court erred in admitting certain testimony of the witness Alfred B. Dressman. Dressman testified, as an expert accountant, as to the present worth of the income or earnings which the widow and children lost by reason of the death of Reverman. It was in evidence that Reverman turned over to his wife $150 per month for the support of the family, including himself, and a hypothetical question was submitted to the witness, which assumed that the amount received by the widow and children was $150 per month, and appellant insists that the expert's calculation based thereon was incompetent and improper because it was laid on an erroneous basis, because the amount of money which the dependent members of the family lost by reason of the death of Reverman was not $150, because out of that amount should be deducted the cost of Reverman's board and lodging. We are not prepared to say that the admission of this testimony was alone so prejudicially erroneous as to authorize a reversal, but, upon another trial, the hypothetical question should be so framed as to include only the amount of money received by the dependent members of the family for their support.

For the reasons indicated, the judgment is reversed, with directions to grant appellant a new trial and for further proceedings consistent herewith.