# L. & N. R. R. Co. v. Grant.

(Decided February 21, 1930.)

(As Modified, on Denial of Rehearing, June 6, 1930.)

ASHBY M. WARREN, WOODWARD, HAMILTON & HOBSON, H. T. LIVELY and J. P. HAMILTON for appellant.

PEAK & PEAK for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This is an appeal from a judgment in favor of appellee for $15,540 for personal injuries he sustained at or

near Lakeland, Jefferson county, Ky., on the evening of March 31, 1926, while he was employed as brakeman on one of appellant's freight trains running from Louisville to Latonia. As a result of the accident appellee lost the sight of his left eye, and eventually the injured eye was removed. At the point where the accident occurred the appellant's railroad is double tracked, one track being known as the noth-bound track and the other as the south-bound track. Appellee was the head brakeman on train No. 74 on the north-bound track, and while another freight train on the south-bound track was passing No. 74, some object struck and broke the windstorm shield on the fireman's side of the cab of the engine on which appellee was riding and he was struck in the eye by a flying particle of glass. This is the second appeal of the case. The opinion on the first appeal is reported in 223 Ky. 39, 2 S. W. )2d) 1063.

As a ground for reversal of the judgment it is urged that the petition, as amended, did not state a cause of action, and appellant's demurrer thereto should have been sustained. No additional pleadings were filed subsequent to the first trial. The same objection to the pleading that is now made was made on the first appeal, and, while at the conclusion of the former opinion it was stated that "other questions not herein discussed and determined are left open," the pleadings were discussed early in the opinion, and it was stated that appropriate pleadings made the issues. Counsel for appellee rightly concluded that the pleadings had been approved. The former opinion is the law of the case on this point, and appellant's first ground must be disallowed.

It was held on the first appeal that the doctrine res ipsa loquitur did not apply, and that there was not sufficient evidence to authorize a submission of the case to the jury under the applicable principles of law as interpreted by the federal courts. On the second trial the evidence was substantially the same as on the first trial, except that the appellant introduced additional witnesses to show that the south-bound train, which it is claimed caused the accident by reason of a defect in one of the cars, was inspected both immediately before and immediately after the accident, and that the appellee introduced a new witness who testified that he inspected train No. 35, which was the south-bound train, and found a defective condition in one of the cars in that train. For a statement of the facts developed on the first trial, refer-

ence is made to the opinion on the former appeal. On both trials it was proved that, while the train on which appellee was riding was passing train No. 35, moving in the opposite direction on the south-bound track, the glass in the windstorm shield on the side of the engine on which he was riding was broken and a particle of glass entered his eye and caused the injury. In reversing the judgment on the first appeal it was said that to sustain his theory that his injuries resulted from appellant's negligence "would require us to infer or conclude that it (the accident) was produced by a cause in some manner under the management or control of, or produced by, the defendant, and then to further infer or presume that such cause was the result of negligence on the part of defendant. In other words, we are asked to indulge an inference upon an inference."

On the second trial the only material testimony introduced by appellee, in addition to the testimony that had been introduced on the first trial, was that given by the witness, I. V. Payton, and whether or not there was sufficient evidence on the second trial to authorize a submission of the case to the jury depends upon the character of the testimony of this witness. I. V. Payton, at the time of the accident on March 31, 1926, was employed by appellant as an inspector at the Strawberry yards in Louisville. At the time his deposition was taken on April 13, 1928, he was residing in New Albany, Ind. He testified that he received instructions to inspect train No. 35 on March 31, 1926; that he inspected the cars in the train when it arrived and found three metal roof sheets shifted on about the ninth car from the engine; that these roof sheets are in strips about two feet wide and run from the comb to the eves of the car and are fastened down with tin cleats. Three sheets of roofing had slid down the roof and extended out past the car a distance of 32 or 36 inches. The longest sheet had one corner folded as if it had rubbed against something. He ordered the car to be taken to the shops and made a written report to his superior, Thomas Tighe. He stated that, according to his best recollection, the car with the defective roof was Louisville & Nashville No. 4013. The defect in this car was reported on form No. 2042, the regular form furnished by the railroad company to the inspectors for that purpose. Payton's deposition was taken more than two years after the accident. He remembered that he had inspected train No. 35 on March 31, but did

not recall inspecting the same train on the night of March 30. The appellant proved by its records and by a number of witnesses that Louisville & Nashville car No. 4013 was not in train No. 35 on March 31, 1926, but was in train No. 35 on March 30, 1926, and arrived at the Strawberry yards at Louisville, Ky., about 11:30 p. m. March 30, 1926, and was shopped at 11:40 p. m. on that night because of a defective roof. D. B. Washer, an inspector at Strawberry under Payton, testified that he and Mayberry, another inspector, inspected train No. 35 on March 30, 1926, and that he made the report on form No. 2042 covering the result of his inspection of Louisville & Nashville car No. 4013, and that Payton was present at that time. William Mayberry testified that he was employed by appellant as an inspector of cars at its Strawberry yards at the time appellee was injured and was a member of the crew that went on duty at 11 p. m. and worked until 7 a. m. Other inspectors who worked with him on this shift, known as the third shift, were Washer and Payton. Payton was the leader. It is the duty of the inspector to make a written report of any car found to be in a defective condition and sent to the shop for repairs. This report is made on a printed form furnished by the railroad company known as form No. 2042 and is delivered to the yard foreman and by him to the general foreman of the Louisville terminals. At the time of the accident in question Thomas Tighe was the yard foreman and J. M. Appelhaus was the general foreman. Mayberry identified a report signed by him and Washer which showed that train 35 was inspected at 11:40 p. m. on March 30, 1926, and car Louisville & Nashville 4013 was shopped for repairs. The report reads as follows: "4013 L. & N. box empty corner siding bd. raked. New at top B-L. 3 metal roof sheets missing B-L." Payton was present when the report was made. The report was delivered to Tighe, the yard foreman, and by him to Appelhaus. Thomas Tighe testified that Payton delivered to him form No. 2042 with the foregoing report thereon on the morning of March 31, 1926, and attached thereto was a further report in the form of a letter signed by Payton which reads as follows:

"Strawberry Station, 3-31, 1926.

"Mr. T. Tighe: Dear Sir:

"I received a message from the dispatcher that something projecting from the side of cars on 2/35

arriving here at 11:30 p. m. 3-30-26 had struck and injured a fireman on train No. 44 while passing on double track near Lakeland.

"The train and cars were inspected here by Washer, Mayberry and myself, we found nothing to cause any such damage or injury except three missing roof sheets and evidence of slight side rake on E. side of L. & N. Box 4013 new defect.

"Simplex coupler A & B ends.

"Yours respy.          "I. V. Payton."

Arthur Bennett testified that he was the fireman on Louisville & Nashville train No. 44 which made the run from Louisville to Lexington on March 30, 1926; that on the evening of that day at a point between Louisville and Anchorage, while the south-bound train was passing, the windstorm shield on the side of the engine on which he was riding was broken and he was slightly injured.

The appellant introduced the original records showing the movements of train 35 on March 30, and March 31, 1926, and the cars making up the train on the respective dates. These records disclose that Louisville & Nashville 4013 was in train 35 on the night of March 30, when fireman Bennett was injured, and not in train 35 on the night of March 31, when appellee was injured, and that train 35 reached the Strawberry yards at Louisville at 11:30 p. m. on March 30, at a time when Payton, Washer, and Mayberry were on duty, and that it reached the same yards at 8:50 p. m. on the night of March 31, and was inspected at 9:10 p. m. when neither Mayberry, Washer, nor Payton was on duty. Marshall Logsdon and George Beisle, who were car inspectors on duty during the second shift from 3 p. m. until 11 p. m., testified that they inspected train 35 on March 31 and shopped two defective cars. The defects in these cars, however, were not such as could have caused the accident in question. It is satisfactorily shown that Louisville & Nashville car No. 4013 arrived at Louisville in train 35 on March 30, 1926, and was sent to the shop for repairs and was in the repair shop on March 31, 1926, when appellee received his injuries.

As heretofore stated, the only material testimony offered by appellee, which differs from that given on the former trial, was the testimony of Payton, and, unless this testimony was sufficient not only to take the case to

the jury but to support the verdict, appellant was entitled to a peremptory instruction in its favor.

The Federal Employers' Liability Act, 45 USCA secs. 51-59, as interpreted by the Supreme Court of the United States, governs the rights of the parties here. If it appears from the record that under the applicable principles of law, as interpreted by that court, the evidence was not sufficient in kind or amount to warrant a finding that the negligence of the railroad company was the cause of the injury, the judgment must be reversed. C. & O. Railway Co. v. Craig, 229 Ky. 365, 17 S. W. (2d) 224; L. & N. R. R. Co. v. Reverman's Adm'x, 228 Ky. 500, 15 S. W. (2d) 300; L. & N. R. R. Co. v. Grant, 223 Ky. 39, 2 S. W. (2d) 1063; Atlantic Coast Line Railroad Co. v. Davis, 279 U. S. 34, 49 S. Ct. 210, 73 L. Ed. 601; Gulf Mobile & N. R. Co. v. Wells, 275 U. S. 455, 48 S. Ct. 151, 72 L. Ed. 370; Chicago M. & St. P. R. R. Co. v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 566, 70 L. Ed. 1041. In the last cited case the court used this language:

> "It is the duty of the trial judge to direct a verdict for one of the parties when the testimony and all the inferences which the jury reasonably may draw therefrom would be insufficient to support a different finding."

In Patton v. T. & P. Railway Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361, the Supreme Court said that, when the record leaves the claims of the plaintiff in the realm of speculation and conjecture, it is not enough. The view that a scintilla of conflicting evidence, irrespective of the character and measure of that to which it is opposed, necessarily requires a submission to the jury, has been disapproved by the federal courts. Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; Hardy-Burlingham Mining Co. v. Baker (C. C. A.) 10 F. (2d) 277. In the instant case the mere fact that some object struck and broke the windstorm shield was insufficient to show appellant's negligence. In addition, it was necessary for the plaintiff to prove that the breaking of the windshield directly resulted from the failure of the defendant to exercise reasonable precaution to prevent it. The testimony of defendant's inspectors shows that they were diligent in their examination of the cars in train No. 35 shortly before the accident occurred

to ascertain their condition. Even if the accident was caused by a projecting piece of roof on a car in train 35 striking the windshield, there was no evidence that the defendant knew, or in the exercise of reasonable care should or could have known, that the roof was projecting, or in the exercise of reasonable care could have prevented the accident.

While it was held in L. & N. R. R. Co. v. Allen's Adm'r, 174 Ky. 736, 192 S. W. 863, and other cases, that the jury are not compelled to accept as true the statements of those who claim to have made an inspection of the place or appliance, which the master is under the duty to render reasonably safe for the servant, yet in those cases it was shown that the accident resulting in injury was caused by an unsafe place or defective appliance. Here there is no evidence that the accident was brought about by reason of an unsafe place or defective appliance, unless the testimony of the witness, Payton, tends to show that it was so caused. Payton was very evasive in his answers to questions on cross-examination when his deposition was taken, and when confronted with the letter dated March 31, 1926, in which he described the defects found in a car in train 2/35 which arrived at Strawberry yards at 11:30 p. m. on March 30, his explanation of why he remembered that he inspected Louisville & Nashville 4013 in train 35 on the night of March 31, 1926, and did not remember having made an inspection of the same train on the evening of March 30, is unsatisfactory and unconvincing. It is apparent that, when his deposition was taken more than two years after the accident occurred, he confused the accident to Bennett, which occurred on the evening of March 30, and the accident to appellee, which occurred on the following evening. The effect of his testimony as tending to establish the defective condition of a car in train 35 on March 31 is weakened, if not entirely destroyed, by the testimony introduced by appellant. In our view, his testimony, when considered along with the other testimony introduced both by appellant and appellee, is too unsubstantial and unconvincing to support a jury verdict. It amounts at best to no more than a scintilla of proof.

Of course, under the practice in the federal courts, it is for the jury to say what weight or credence shall be given to the whole or any part of the testimony sub-

mitted, after sufficient evidence has been introduced to justify the submission of the case to the jury. But that is not the question here. The question is whether the evidence is sufficient to justify a submission of the case to the jury, conceding the credibility of the witness Payton. The rule is well settled that in federal courts it is the duty of the trial judge to direct a verdict whenever the evidence so clearly preponderates that, in the exercise of sound discretion, a verdict to the contrary should be set aside. It has been held that although there may be some conflict in the evidence, if in the sound discretion of the court a new trial should be awarded the party asking the direction, in the event of an adverse verdict, it is the duty of the court to direct a verdict. Patton v. Texas & Pacific R. R. Co., supra; Anderson v. Kaercher (C. C. A.) 38 F. (2d) 462; Schloss Bros. & Company v. Chas. Stern Co. (C. C. A.) 36 F. (2d) 628; W. J. Foye Lumber Company v. Pennsylvania R. R. Co. (C. C. A.) 10 F. (2d) 437; Martin v. I. C. R. R. Co. (C. C. A.) 23 F. (2d) 324. In Delk v. R. R. Co., 220 U. S. 580, 587, 31 S. Ct. 617, 620, 55 L. Ed. 590, Mr. Justice Harlan, writing for the court, said on this point:

"The rule upon that subject is well settled by the authorities. It is that 'when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant.'"

The principle controlling the trial court in the direction of a verdict has been stated in the recent case of Small Co. v. Lamborn & Co. (267 U. S. 248, 45 S. Ct. 300, 303, 69 L. Ed. 597), supra, as follows:

"The rule for testing the direction of a verdict, as often has been held, is that where the evidence is undisputed, or of such conclusive character that if a verdict were returned for one party, whether plaintiff or defendant, it would have to be set aside in the exercise of a sound judicial discretion, a verdict may and should be directed for the other party. The view that a scintilla or modicum of conflicting evidence, irrespective of the character and measure of that to

which it is opposed, necessarily requires a submission to the jury has met with express disapproval in this jurisdiction, as in many others. Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867; Pleasants v. Fant, 22 Wall. 116, 122, 22 L. Ed. 780; Bowditch v. Boston, 101 U. S. 16, 18, 25 L. Ed. 980; Anderson County Commissioners v. Beal, 113 U. S. 227, 241, 5 S. Ct. 433, 28 L. Ed. 966; Delaware, etc., R. R. Co. v. Converse, 139 U. S. 469, 472, 11 S. Ct. 569, 35 L. Ed. 213.''

In St. Louis-San Francisco Ry. Co. v. Baehler (C. C. A.) 26 F. (2d) 26, 28, the court said:

"The rule in regard to directed verdicts, announced by our court in the case of Atchison, T. & S. F. R. Co. v. Wyer (C. C. A. 8) F. (2d) 30, at page 32, is as follows: 'It is the duty of the trial court to direct a verdict at the close of the evidence in two classes of cases: (1) That class in which the evidence is undisputed; and (2) that class in which the evidence is conflicting, but is of so conclusive a character that the court, in the exercise of a sound judicial discretion, would set aside a verdict in opposition to it. Small Co. v. Lamborn, 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; Ewert v. Beck, 235 F. 513, 149 C. C. A. 59; Fricke v. International Harvester Co., 247 F. 869, 871, 160 C. C. A. 91; New Amsterdam Casualty Co. v. Farmers' Co-op. Union of Lyons, Kan. (C. C. A.) 2 F. (2d) 214; Walton Trust Co. v. Taylor (C. C. A.) 2 F. (2d) 342; Kintyre Farmers' Co-op. Elevator Co. v. Midland National Bank (C. C. A.) 2 F. (2d) 348.' ''

Also see Benash v. Business Men's Assurance Co. (C. C.A.) 25 F. (2d) 423; Anderson v. Southern Ry. Co. (C. C. A.) 20 F. (2d) 71; Chicago, Milwaukee & St. Paul R. R. Co. v. Coogan, supra; Wheelock v. Clay (C. C. A.) 13 F. (2d) 972.

The case of Gunning v. Cooley, 50 S. Ct. 231, 74 L. Ed. —, decided March 12, 1930, does not announce a different rule. The court reaffirmed the rule announced in the above cited cases, but held that in the particular case the evidence was conflicting and that plaintiff's evidence was sufficient to warrant a finding in her favor. A reading of the opinion in the Gunning case discloses that the

evidence for plaintiff in support of her contention that her injury was caused by the negligence of the defendant was substantial and was not explained or destroyed by the evidence of the defendant. The facts were such as might induce fair-minded men to draw different conclusions from them, and the question, therefore, was one for the jury.

Under our practice, if there is some evidence, however slight, which supports the plaintiff's cause, the issue must be submitted to the jury, but if the verdict is flagrantly against the evidence, it will be set aside. Dailey v. Lexington & E. Ry. Co., 180 Ky. 668, 203 S. W. 569; Commonwealth Life Insurance Co. v. Goodknight's Adm'r, 225 Ky. 688, 9 S. W. (2d) 1013; Commonwealth Life Insurance Co. v. Pendleton, 231 Ky. 591, 21 S. W. (2d) 985. The evidence in the instant case was probably sufficient to authorize a submission of the case to the jury, but it was insufficient, taken as a whole, to support a verdict for the plaintiff. It follows that, under the applicable federal rule, the trial court erred in overruling appellant's motion for a peremptory instruction.

Appellee insists that the court erred in refusing to admit a copy of the report about the accident made to the Interstate Commerce Commission pursuant to the requirements of 45 USCA sec. 38. This section of the federal statutes makes it the duty of the general manager of an interstate carrier to submit a monthly report under oath of all accidents resulting in injury to persons. 45 USCA sec. 41 specifically provides that: "Neither said report nor any report of said investigation nor any part thereof shall be admitted as evidence or used for any purpose in any suit or action for damages growing out of any matter mentioned in said report or investigation." If the original cannot be admitted as evidence, nor used for any purpose in any suit or action for damage growing out of any matter mentioned therein, then a fortiori a copy of the report is inadmissible. The purpose of the act in requiring a monthly report of accidents to be submitted to the Interstate Commerce Commission was to afford the commission an opportunity to investigate such accidents, and no doubt the admission of the reports as evidence was prohibited in order to encourage prompt and full reports of all accidents resulting in injury to persons.

All questions not discussed are expressly reserved.

Judgment reversed for further proceedings not inconsistent herewith.

Whole court sitting.