## Louisville & N. R. Co. v. McCoy.

(Decided Nov. 16, 1937.)

604

ASHBY M. WARREN and LOW & BRYANT for appellant.

GOLDEN & LAY for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

A judgment for $7,222 in favor of appellee, Pinquard M. McCoy, against the appellant for damages to his health allegedly caused by the inhalation of carbon monoxide gas, was reversed for errors relating to the admission and rejection of evidence. All other questions were expressly reserved. Louisville & Nashville Railroad Company v. McCoy, 261 Ky. 435, 87 S. W. (2d) 921. Upon a second trial McCoy recovered judg-

ment for $6,000, and the railroad company again appeals.

McCoy had been an engineer and fireman. Because of falling off in work and his juniority in the service he had been demoted for the time being to a hostler in the yards at Wallsend, near Pineville. A hostler is one who takes charge of a locomotive after a trip. There were three such employees in this yard, of equal rank, each working on an eight-hour shift or trick, and each having a helper. McCoy's trick began at 10:30 p. m. and Abe Hoskins was his assistant. He had been on this particular job six or eight nights, but had been familiar with the conditions for fifteen years. It was the duty of the hostler to inspect the locomotive in a general way for leaks, loose parts, or other defects; have it supplied with grease, sand, water, etc.; shake down the fire and ashes; and make such minor repairs as were needed and could be done without sending the engine to the round-house. For the purpose of cleaning out the ashpit and of permitting the workmen to get under the engine to make the repairs, there is maintained a pit between the rails. It is about 25 feet long, $3\frac{1}{2}$ feet wide, and $3\frac{1}{2}$ to $4\frac{1}{2}$ feet deep. It appears that the adjacent track on one side is perhaps 2 feet higher, and because on this occasion there was a large quantity of cinders piled upon the other side, so it is claimed, the ventilation in the pit was insufficient when an engine was over it. Those conditions and the presence of smoldering cinders in the pit generating carbon monoxide gas form the basis of the allegation of negligence on the part of the railroad company in not furnishing the plaintiff a safe place in which to work.

At 9:55 p. m. Engineer Nelson brought in an engine and filed what is designated as a "work report," which is required to be made showing what repairs and special attention, if any, are needed to the engine. This was while another hostler, James Woods, was on duty. McCoy testified that he came to his place of work about ten minutes early and met Nelson leaving. The latter told him to look at his report and if he hadn't put on it that the brakes should be tightened asked him to put it on for him, and requested that McCoy tighten the brakes as the engine might be needed next morning. Nelson denied having seen McCoy that night, and stated there was nothing wrong with the brakes. Woods testified that he and Nelson inspected the engine and then he and

Hoskins took it to the sand track, supplied it with sand, and brought it over the pit where it was when McCoy came on duty. McCoy testified that the engine was over the pit when he came, but that he never saw Woods or anybody else who had worked with him. He looked for Nelson's report but didn't find it. However, he had stated on the first trial that he had seen that report, and also in his deposition taken as on cross-examination that he had seen it and that he had to adjust the brakes. The report produced on the trial referred only to the need for an adjustment of the lubricator. By the time he looked over the reports, got his tools ready, and went to work on the brakes, McCoy testified perhaps an hour and a half had elapsed. While he was under the engine he learned for the first time of his helper's presence by hearing him on the engine putting water in it. When he went off duty that night, Woods testified, Abe Hoskins, McCoy's helper, was at work on the engine, but whether he was then getting ready to "knock the fire" or had already done so he could not say. He saw McCoy there near the pit.

On this occasion Abe Hoskins, for accommodation, had relieved his brother, George, who was Woods' helper, a half hour earlier, or about 10 o'clock, which accounts for his helping Woods. He testified that he had "knocked the fire out" and wet the cinders down while Woods was on duty. McCoy related that he had backed down into the pit between the pilot and the front driving wheels. He had a torch and the pit was dark except where he was. It was about 20 feet to the back end. There was no ventilation except between the engine wheels. While working strenuously he began to choke and smother and called to Hoskins for aid. He was breathing like his throat was closed and feeling like a lot of needles were being run into his throat and legs. With Hoskins' assistance he crawled out from under the engine and then became unconscious until 4 o'clock in the morning. When he revived he was lying down in the hostler's house. He drank some coffee and got into the air and then felt better, although his head was throbbing, vision blurred, and he had a drumming sensation in his ears. He then learned for the first time that there were cinders in the back of the pit which had been wet down but were still hot in the center of the pile. He started in helping Hoskins shovel out the cinders, but the odor was so strong he

couldn't stand it and soon commenced sinking down. He went home and remained in bed two or three days. The unchallenged records, however, show that he worked as a hostler the next night, and then was put back as a fireman, in which job he served a number of days during the following month. McCoy was finally let out of service in the following June on account of the necessary reduction of forces.

Hoskins testified McCoy was overcome after the engine had been moved off and while they were shoveling the cinders and coals out of the pit.

The evidence tending to show negligence of the defendant in not furnishing the plaintiff a safe place in which to work is limited to his testimony that if a hostler did not have time to clear the pit of cinders it was his duty to notify his successor on the job that the fire and cinders had been left in it; that Woods left the smoldering coals without notifying him; and that he went to work without any knowledge of their presence. It is further argued as we have indicated, that the elevated track on one side and a large pile of cinders on the other obstructed the ventilation under the engine.

We pass over the very doubtful point that the defendant was guilty of negligence, and may observe also that the overwhelming weight of the evidence is that the plaintiff's anemic condition is not due to his having encountered carbon monoxide or other permanently injurious gas on this occasion. It seems to us to be quite clear that, whatever unsafe condition there might have been, the plaintiff assumed the risk incident thereto.

The case comes under the Federal Employers' Liability Act (45 U. S. C., secs. 51-59 [45 U. S. C. A., secs. 51-59]). Since no violation of any federal statute enacted for the safety of employees contributed to the injury claimed, the defense of assumed risk is available. Louisville & Nashville Railroad Company v. Reverman's Adm'x, 228 Ky. 500, 15 S. W. (2d) 300; Chesapeake & O. Railway Company v. Craig, 229 Ky. 365, 17 S. W. (2d) 224. The decisions of the federal courts are controlling. Chesapeake & O. Railway Company v. DeAtley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016, reversing Chesapeake & O. Railway Company v. De Atley, 159 Ky. 687, 167 S. W. 933; Louisville, H. & St. L. Railway Company v. Wright, 170 Ky. 230, 185 S. W. 861; Davis v. Chesapeake & O. Railway Company, 166 Ky. 490, 179

S. W. 422, 425; Louisville & N. Railroad Company v. Grant, 234 Ky. 276, 27 S. W. (2d) 980.

This is not of the class of cases where the employee, at the command or direction of his superior, entered a dangerous place in order to do his work, and there can be no claim of any primary duty of obedience, or of any assurance of safety by one superior in authority. Nor can it be claimed the employee was given no opportunity to inspect the place. Cf. Louisville & Nashville Railroad Company v. Thomas' Adm'r, 170 Ky. 145, 185 S. W. 840. The plaintiff assumed all the normal risks incidental to his employment which were known to him or which, in the exercise of ordinary care, were ascertainable. Davis v. Chesapeake & O. Railway Company, supra; Jones v. Southern Railway in Kentucky, 175 Ky. 455, 194 S. W. 558. The defendant was not compelled to provide a place of work that was absolutely safe and the most convenient, for its duty was discharged when it provided a place that was reasonably safe for those exercising ordinary intelligence for their own safety. Harris v. Cincinnati, N. O. & T. P. Railway Company, 176 Ky. 846, 197 S. W. 464. The plaintiff assumed risks due to the negligence of his employer and fellow employees if they were obvious or fully known and appreciated by him. Boldt v. Pennsylvania Railroad Company, 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385; Chesapeake & O. Railway Company v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914.

The condition of the place with respect to ventilation of the pit was admittedly well known to the plaintiff. If the cinders had been shaken in the pit and gas was being generated by incomplete combustion caused by Hoskins having put water upon them after the plaintiff went on duty and during the hour and a half he was engaged in getting his tools, then certainly he cannot be heard to say that the company was liable for his ignorance of his subordinate's act in thus creating the dangerous condition he claims. He was the vice principal or the representative of the company in control of the place and of the work in getting the engine ready for another run. If, as plaintiff claimed, the cinders were in the pit when he went on duty, the same bar to recovery exists. As by way of emphasizing his duty to go under the engine and tighten the brakes, regardless of a request of the engineer, the plaintiff testified that it was his instruction and duty to inspect the engine

and of his own initiative to repair anything he could. He knew that the fire would have to be cleaned out into the pit if that had not already been done. Indeed, it was his duty to see that the cinders were shaken out, for he testified it was a part of his duty "to keep fire in the engines and see that they were ready to go out on time next morning." He knew the custom of cooling the cinders with water.

He was in complete charge and, as was said in Davis v. Chesapeake & O. Railway Company, supra, "He alone knew whether it was safe or unsafe to attempt its performance in the manner pursued by him. He was charged with the duty of exercising ordinary care to ascertain whether the place and the instrumentalities were reasonably safe for the work he had to perform." This is not a case where an employee was exposed to an unusual or extraordinary condition or was called upon to meet a danger without having any means for ascertaining it. To us it seems inescapable that, if the wet, smoldering cinders were in the pit, and were as dangerous as the plaintiff testified he well knew them to be from observation and his own experience, their presence certainly should have been discovered in the exercise of any degree of care in the plaintiff's inspection of the engine, and in his going under it and remaining twenty or thirty minutes, although they may have been in the back part of the pit. If he did not discover the condition, then it was not the fault of the company, which, as stated, was at the time and place represented by the plaintiff alone, and knowledge of the conditions existing was chargeable to him. 18 R. C. L. 735; Davis v. Chesapeake & O. Railway Company, supra; Illinois Central Railroad Company v. Williams' Adm'r, 171 Ky. 594, 188 S. W. 634; McCarty v. Louisville & Nashville Railroad Company, 202 Ky. 460, 260 S. W. 6; Payne, Director General, v. Blondell, 208 Ky. 122, 270 S. W. 725; Missouri Pacific Railway Company v. Aeby, 275 U. S. 426, 48 S. Ct. 177, 72 L. Ed. 351; Toledo, St. L. & W. Railroad Company v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. Ed. 513.

In an action under the Federal Employers' Liability Act, the rule of the federal courts as to the burden and quantum of proof necessary to require submission of issues must be applied by the state courts. But questions of procedure and practice are governed by state law. Louisville & Nashville Railroad Company v. Hall,

223 Ala. 338, 135 So. 466, certiorari denied 284 U. S. 661, 52 S. Ct. 37, 76 L. Ed. 560. The scintilla rule, observed in state practice, has no application to cases brought under the federal law, the rule of consideration of the evidence being that it is the duty of the trial judge to direct a verdict for one of the parties when the testimony and all the inferences which the jury reasonably may draw therefrom would be insufficient to support a different finding. Louisville & Nashville Railroad Company v. Grant, 234 Ky. 276, 27 S. W. (2d) 980. The rule in its application on appeal is that if upon an examination of the record it is found that as matter of law the evidence is not sufficient to sustain the essential findings of fact, the judgment will be reversed. C. M. & St. P. Railway Company v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 70 L. Ed. 1041.

Our conclusion, therefore, is that the defendant's motion for a peremptory instruction to find for it should have been sustained.

Judgment reversed.

Whole court sitting.